Present:  All the Justices

MART T. HARRIS

                                             OPINION BY
v.   Record No. 002337        JUSTICE LAWRENCE L. KOONTZ, JR.
                                      September 14, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE COURT OF APPEALS OF VIRGINIA

    In this appeal, we consider whether a law enforcement officer had a reasonable belief that an individual was trespassing on private property providing a sufficient basis for the officer to detain and conduct a "pat-down" search of the individual.

                            BACKGROUND

    On the afternoon of March 20, 1997, Officers J.M. Whitehead and T.B. Shelton of the City of Suffolk Police Department received a radio dispatch relaying information or a "tip" from an anonymous telephone caller that a black male was selling drugs near the corner of Davis Boulevard and the private road leading into the Cogic Square Apartments, a public housing development.  The anonymous tipster had identified the individual as "Mart Harris" and had indicated that Harris was wearing jeans, a white T-shirt, and a checkered jacket.  The tipster had further stated that Harris was armed.

    Upon arriving at Cogic Square, Whitehead and Shelton observed three men on the property of the housing development at

the location indicated by the anonymous tipster. One of the men was a black male dressed in jeans, a white T-shirt, and a checkered jacket. The three men were standing near a bench that formerly had been used as a bus stop. A short distance away there was a "no trespassing" sign posted on one of the buildings of the housing development.

Shelton had worked for two and one-half years in a drug elimination program at Cogic Square, was familiar with most of the residents and their regular visitors, and had never before seen any of the three men at the housing development. Shelton subsequently testified that for these reasons he formed the opinion that the three men were possibly trespassing. Neither Shelton nor Whitehead observed any activity consistent with the anonymous tipster's assertion that drugs were being sold. The man fitting the description given by the tipster did not readily appear to be armed and there were no visible bulges in his clothing that might have contained a concealed weapon.

Shelton approached the man wearing the checkered jacket. At that time, Shelton did not question the man to ascertain his identity or whether he was a visitor at the housing development. Rather, based upon the information from the anonymous tip that this man was armed and because this man's jacket was loose fitting, Shelton decided to conduct a pat-down search for weapons as a precaution for the officers' safety. During the

2

pat-down search, Shelton seized a handgun concealed under this man's jacket near his left hip.

Following the seizure of the handgun and in response to Shelton's questions, the man admitted that he was Mart Harris. Shelton then determined that none of the three men was a resident of Cogic Square. He charged the other two men with trespassing and arrested Harris for trespassing and possession of a concealed weapon. Shelton performed a search of Harris incident to the arrest on the trespassing and firearm charges and seized a clear, zip-lock, plastic bag containing a substance later determined to be 3.29 ounces of marijuana. Subsequently, Harris was indicted for possession of marijuana with intent to distribute, Code § 18.2-248.1, and possession of a firearm after having been convicted of a felony, Code § 18.2-308.2.

Immediately prior to trial, Harris moved to suppress the evidence seized during the protective search and the subsequent search incident to arrest. The Commonwealth contended that the initial stop and search were permissible because the officers had corroborated sufficient information from the anonymous tip regarding Harris and his illegal activity and also that Shelton reasonably believed Harris was trespassing prior to detaining him.

The trial court denied Harris' motion to suppress, finding that Shelton's corroboration of the appearance of the individual

3

described by the anonymous tipster coupled with his own observations and knowledge of the area provided Shelton with an adequate basis to temporarily detain Harris.  The trial court further found that the protective search was warranted by the tipster's assertion that Harris was armed.  The trial court convicted Harris on both charges, sentencing him to five years' imprisonment, with three years suspended, for possession of marijuana with intent to distribute and five years' imprisonment, with four years suspended, for possession of a firearm after having been convicted of a felony.  The sentences were imposed to run consecutively.[1]

Harris' initial appeal of these convictions to the Court of Appeals of Virginia was dismissed for failure to file a timely notice of appeal.  By an order dated March 2, 1999, this Court granted Harris' subsequent petition for a writ of habeas corpus and permitted him to seek a delayed appeal in the Court of Appeals.  Harris contended in his petition for appeal in the Court of Appeals that the anonymous tip lacked sufficient indicia of credibility to provide the police with a reasonable, articulable suspicion that Harris was involved in criminal

---

[1] Additionally, Harris was convicted of trespassing and carrying a concealed weapon, both misdemeanors.  Harris did not challenge these convictions on appeal.

4

activity.  By order dated December 13, 1999, the Court of Appeals granted Harris' petition for appeal.

Before the argument of Harris' appeal in the Court of Appeals, the United States Supreme Court released its opinion in Florida v. J.L., 529 U.S. 266 (2000), holding that an anonymous tip identifying a person by location and appearance and asserting that the person is armed is not sufficient to justify the temporary detention of a person matching the description given by the tipster in order to conduct a pat-down search where the law enforcement officers responding to the tip did not also corroborate the tipster's assertions that the individual was involved in illegal activity.  Id. at 268.  Applying J.L., the Court of Appeals determined that the anonymous tip received by the police in the present case did not provide an adequate basis for initially detaining Harris because the officers' observations of Harris, and the other two men, did not "corroborate the tipster's assertion that [Harris] was engaged in selling drugs."[2]  Harris v. Commonwealth, 33 Va. App. 325, 332, 533 S.E.2d 18, 20 (2000).

_____

[2] The Court of Appeals erroneously recites in its opinion that Shelton identified Harris by name before conducting the pat-down.  Although the testimony concerning the sequence of events which preceded the pat-down is somewhat confused, when Shelton was asked on cross-examination if he had identified Harris "by name" prior to the pat-down, Shelton replied, "No, sir."  We note, however, that even if Shelton had identified Harris by confirming his name prior to conducting the pat-down,

5

The Court of Appeals reasoned, however, that the police were not prohibited from unobtrusively observing the activities of a person identified by an anonymous tipster as possibly being involved in criminal activity in order to "corroborate[] the anonymous information with the specific indicia of reliability required by the holding of J.L., or . . . provide[] independent reasonable suspicion supported by articulable facts that criminal activity may be afoot." Harris, 33 Va. App. at 333, 533 S.E.2d at 21 (internal quotation marks omitted)(emphasis added). The Court of Appeals concluded that, in light of his familiarity with the residents of Cogic Square and their regular visitors, Shelton had "a reasonable basis to believe that [Harris] was trespassing on private property" and that this justified the initial detention of Harris. Id., 533 S.E.2d at 22.

The Court of Appeals properly recognized that "the authority to conduct a pat-down search does not follow automatically from the authority to effect an investigative stop." Id. at 334, 533 S.E.2d at 22. Relying on the language in J.L. to the effect that the need to confirm the reliability of an anonymous tip "in no way diminishes a police officer's prerogative . . . to conduct a protective search of a person who

this still would not have corroborated the tipster's allegations of criminal wrongdoing.

6

has already been legitimately stopped," J.L., 529 U.S. at 274, the Court of Appeals concluded that Shelton could rely on "the information concerning the presence of a weapon" in the tip as the basis for conducting a protective pat-down search once Harris was otherwise lawfully detained. Harris, 33 Va. App. at 334, 533 S.E.2d at 22. Accordingly, the Court of Appeals affirmed the judgment of the trial court. We awarded Harris this appeal.

DISCUSSION

Before addressing the substantive issue raised by this appeal, we must first consider the procedural posture of Harris' conviction for possession of a firearm after having been convicted of a felony. This Court's order granting Harris' petition for a writ of habeas corpus and awarding him a delayed appeal references the trial court's record numbers for his convictions for possession of marijuana with intent to distribute and possession of a firearm after having been convicted of a felony, but identifies only the drug-related conviction by express reference to the offense by name. The notice of appeal filed pursuant to that order also identifies both convictions by those record numbers, and Harris sought reversal of both convictions in his petition for appeal in the Court of Appeals.

7

Although some of the Court of Appeals' records reference both of the trial court's record numbers, the Court of Appeals affirmed Harris' drug-related conviction, but concluded that a delayed appeal had not been awarded with respect to the firearm conviction.  Harris, 33 Va. App. at 329 n.1, 533 S.E.2d at 19 n.1.  This conclusion was erroneous.

An appellate court may take judicial notice of its own records.  Cunningham v. Hayes, 204 Va. 851, 857, 134 S.E.2d 271, 275, cert. denied, 376 U.S. 973 (1964).  Reading our March 2, 1999 order in its entirety, it is clear that we intended Harris to have the right to seek an appeal of both convictions.  Because the issue raised in the appeal necessarily applies to the suppression of all the evidence seized from Harris, the Court of Appeals' erroneous interpretation of our order does not undermine the arguments made by the parties, nor will it affect our analysis.  Indeed, the Court of Appeals recognized that "[t]he issue in this case is the validity of the initial stop and accompanying pat-down, not the arrest or search incident thereto."  Harris, 33 Va. App. at 331, 533 S.E.2d at 20.  That same issue is dispositive in both of the appealed convictions.  Accordingly, we hold that Harris' delayed appeal relates to both convictions, the Court of Appeals' order awarding that appeal brought both convictions before that Court, and Harris' appeal

8

from the judgment of that Court brings both convictions before us in this appeal.

We now turn to the substantive issue raised by this appeal. Although the Commonwealth does not expressly concede the applicability of the holding in J.L. to the facts of this case, it does not contend that the Court of Appeals erred in holding that the anonymous tip received by the police, coupled with their corroboration of innocuous information asserted in the tip, was insufficient to support the initial detention of Harris. Accordingly, we need not address that aspect of the Court of Appeals opinion. Rather, the dispositive issue is whether the Court of Appeals properly concluded under the particular facts of this case that Shelton had the requisite reasonable, articulable suspicion that Harris may have been engaged in criminal wrongdoing sufficient to warrant the initial detention of Harris consistent with his rights under the Fourth Amendment to the Constitution of the United States. See generally Terry v. Ohio, 392 U.S. 1 (1968).

It is undisputed that the officer did not observe any conduct that would support a reasonable belief that Harris was selling drugs or that he was unlawfully in possession of a concealed weapon. Thus, our focus is upon whether Harris' conduct reasonably suggested that he was trespassing. We are of

9

opinion that our decision in Ewell v. Commonwealth, 254 Va. 214, 491 S.E.2d 721 (1997), controls our analysis.

In Ewell, we held that an off-duty police officer working as a security guard in an apartment complex was not justified in stopping a vehicle leaving the complex's parking lot and detaining the operator based on the officer's suspicion that the operator was trespassing because the officer was unfamiliar with the vehicle and its operator. Id. at 217, 491 S.E.2d at 723. In that case, the record showed that the officer "was employed primarily to enforce the complex's policy against trespassing. The complex's parking lot had only one access, and it was posted with a ten-by-five foot, lighted sign, stating 'no trespassing.' " Id. at 215, 491 S.E.2d at 722. The officer testified that "he was familiar with most of the complex's residents and their automobiles" and "was concerned because it was very early [in the morning] and the car was parked in an area suspected of 'high narcotics' trafficking." Id. at 216, 491 S.E.2d at 722.

The Commonwealth contends that Ewell may be distinguished on several grounds. The Commonwealth first contends that the officer in Ewell was familiar with the apartment complex only through his part-time employment as a security guard, whereas Shelton's knowledge of Cogic Square through his two-and-a-half years of work in the drug elimination program provided him with

a greater familiarity with the residents and their guests than was evident in Ewell. We disagree.

There is nothing in Ewell to indicate the length of time the officer had been employed as a security guard by the apartment complex; thus, we cannot say that Shelton's asserted familiarity with the residents and visitors of Cogic Square was quantitatively greater than that of the officer in Ewell. Moreover, the officer in Ewell "was employed primarily to enforce the complex's policy against trespassing" and it follows logically that his familiarity with the complex, its residents, and their guests would be naturally heightened with respect to enforcing that policy. By way of contrast, on the record before us we cannot say that Shelton's duties under the drug elimination program focused primarily on, or even necessarily included, regularly enforcing Cogic Square's no trespassing policy.

The Commonwealth next contends that Shelton's testimony that he participated in the drug elimination program at Cogic Square creates a heightened expectation that drug trafficking was occurring at Cogic Square and that Harris and the other two men were thus more likely to be trespassers involved in that criminal activity. We see no distinction between the assertion in Ewell that it was "suspected" that drug trafficking was taking place in the parking lot and the "reasonable inference"

11

the Commonwealth asks this Court to draw in this case that an ongoing drug elimination program establishes that the particular location where Harris was standing was known for drug trafficking.

To the contrary, unlike the officer's assertion in Ewell that the specific area where he first observed the defendant in her car was suspected as a drug market, Shelton testified only that Cogic Square as a whole was the subject of the drug elimination program. Moreover, it does not necessarily follow that a long-term drug elimination program supports the inference that drug trafficking continued to occur, for it might be equally true that the program was successful and that Cogic Square was being maintained in the program in order to assure that it remained drug-free.

Finally, the Commonwealth contends that while "there was nothing unusual about [Ewell] leaving an apartment complex in her automobile" near midnight, Harris and the other two men "had no apparent reason to be standing on [a] private street corner." The evidence, however, was that the three men were standing and conversing near a former and, by appearance, possibly still functioning bus stop immediately adjoining a public street. Certainly, three persons standing and conversing near an apparent bus stop adjoining a public street at midday is no more unusual than a person driving away from a parking lot at

12

midnight.  Moreover, although the prominence of the "no trespassing" sign posted on one of the buildings at Cogic Square is not clear from the record, there is nothing in the record to suggest that this sign was any more prominent than a ten-by-five foot, lighted sign posted at the single entrance to the property as in Ewell.  Thus, just as in Ewell, the officer observed an individual on private property that was posted "no trespassing," but otherwise "act[ing] as any other person might have acted under similar circumstances."  Id. at 217, 491 S.E.2d at 723.

In each case, the officers' subjective knowledge that the area was known for drug trafficking did not attach with any particularity to the observed activity or the individual.  Each officer had no more than an "unparticularized suspicion or 'hunch' " that criminal activity was afoot.  See Terry, 392 U.S. at 27.  As such, each officer's subjective belief that the individual might be a trespasser was not sufficient to warrant a non-consensual investigatory detention.

The Commonwealth relies upon the information of the anonymous tipster that Harris was armed as justification for heightening Shelton's inchoate "hunch" that Harris was trespassing to the level of a reasonable, articulable suspicion. In doing so, the Commonwealth bootstraps the legitimate concern for law enforcement officers' safety, which permits a protective search of a legally detained suspect, to serve as the basis for

13

detaining the suspect. However, the issue before this Court is not whether Shelton could, based on the information in the tip that Harris was armed, conduct the protective pat-down had Harris been otherwise lawfully detained, but whether Shelton had a reasonable, articulable suspicion to warrant detaining Harris in the first place.

As we have noted, nothing in the behavior observed by the officers corroborated the tipster's allegation that Harris was armed. Nor did the tipster assert that Harris was trespassing, and nothing in the information supplied suggests that the tipster would have a reason to know whether Harris was lawfully on the property of Cogic Square. The mere presence of an unknown individual on the property of a large housing development does not create a reasonable suspicion that such an individual is engaged in trespassing or some other criminal activity. Thus, the uncorroborated tip in no way elevates Shelton's inchoate hunch that Harris was trespassing, an offense not generally associated with the wrongdoer being armed, to a reasonable, articulable suspicion of criminal wrongdoing to warrant detaining Harris in order to conduct a protective pat-down search based upon that same information.

Accordingly, we hold that, at the time Shelton detained Harris, Shelton lacked a sufficient reasonable, articulable suspicion that Harris was engaged in any criminal activity and,

thus, the initial seizure of Harris was in violation of his Fourth Amendment rights. Consequently, the evidence obtained as a result of that seizure and in the search incident to Harris' arrest was tainted.

CONCLUSION

For these reasons, we hold that the trial court erred in failing to suppress the evidence obtained as a result of the initial seizure of Harris and in the subsequent search of Harris incident to his arrest, and the Court of Appeals erred in affirming the trial court's judgment. Accordingly, we will reverse the judgment of the Court of Appeals, enter final judgment vacating Harris' convictions for possession of marijuana with intent to distribute and possession of a firearm after having been convicted of a felony, and dismiss the indictments against him.

Reversed and final judgment.

15