COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Clements and Agee
Argued at Richmond, Virginia


JAMES DANIEL PRESSLEY

                                    MEMORANDUM OPINION* BY
v.    Record No. 2710-01-2      JUDGE JEAN HARRISON CLEMENTS
                                        JANUARY 21, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Thomas N. Nance, Judge

            Cynthia E. Payne, Assistant Public Defender
            (Office of the Public Defender, on brief),
            for appellant.

            Margaret W. Reed, Assistant Attorney General
            (Jerry W. Kilgore, Attorney General;
            Donald E. Jeffrey, III, Assistant Attorney
            General, on brief), for appellee.


     James Daniel Pressley was convicted on his conditional plea

of guilty of possession of cocaine with intent to distribute, in

violation of Code § 18.2-248.  On appeal, he contends the trial

court erred in denying his motion to suppress the cocaine found in

his pants by the police as the product of a warrantless pat-down

search and seizure that violated his Fourth Amendment rights.

Finding no error, we affirm the judgment of the trial court.

     As the parties are fully conversant with the record in this

case and because this memorandum opinion carries no precedential

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (alterations in original) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed de novo on appeal." Id. (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). However, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699).

On appeal, Pressley asserts he was "seized" when several uniformed police officers surrounded him on a street corner and Officer Ryan Hickson began to conduct a pat-down search of his person. That seizure, Pressley contends, was unlawful because Hickson did not have grounds to support a reasonable suspicion of criminal activity before conducting the search. Hickson's

-

observation of Pressley shoving something inside the back of his pants, where Hickson then observed a large bulge, amounted to nothing more than a hunch that the bulge may have been drugs or a weapon, Pressley maintains.  Thus, Pressley concludes, the pat-down search by Hickson violated his Fourth Amendment rights and the trial court erred in refusing to suppress the cocaine, a product of the unlawful warrantless seizure and search.

Under well-established Fourth Amendment principles, "[t]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'"  United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)).  "Actual proof that criminal activity is afoot is not necessary; the record need only show that it may be afoot."  Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992).  However, the police's "justification for stopping appellant . . . must have been based upon more than an 'inchoate and unparticularized suspicion or "hunch."'"  Harris v. Commonwealth, 33 Va. App. 325, 333, 533 S.E.2d 18, 21 (2000) (quoting Terry, 392 U.S. at 27), rev'd on other grounds, 262 Va. 407, 551 S.E.2d 606 (2001).

In addition, "[t]here are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop."  Hoye v. Commonwealth, 18 Va. App. 132, 135, 442 S.E.2d 404, 406 (1994).  Indeed, as the

-

Supreme Court stated in Illinois v. Wardlow, 528 U.S. 119, 124-25

(2000):

> In reviewing the propriety of an officer's
> conduct, courts do not have available
> empirical studies dealing with inferences
> drawn from suspicious behavior, and we cannot
> reasonably demand scientific certainty from
> judges or law enforcement officers where none
> exists.  Thus, the determination of
> reasonable suspicion must be based on
> commonsense judgments and inferences about
> human behavior.

In making that determination, "the courts must consider 'the

totality of the circumstances—the whole picture.'"  Hoye, 18

Va. App. at 135, 442 S.E.2d at 406 (quoting Sokolow, 490 U.S. at

8).

Furthermore, "[a]lthough the authority to conduct a pat-down

search does not follow automatically from the authority to effect

an investigative stop, 'where the officer can "point to particular

facts from which he reasonably inferred that the individual was

armed and dangerous[,]" [he is] justified in searching for

weapons.'"  Harris, 33 Va. App. at 334, 533 S.E.2d at 22

(lattermost alteration in original) (quoting Williams v.

Commonwealth, 4 Va. App. 53, 66-67, 354 S.E.2d 79, 86 (1987)

(quoting Sibron v. New York, 392 U.S. 40, 64 (1968))).

"Reasonableness is judged from the perspective of a reasonable

officer on the scene allowing for the need of split-second

decisions and without regard to the officer's intent or

motivation."  Scott v. Commonwealth, 20 Va. App. 725, 727, 460

-

S.E.2d 610, 612 (1995). "The officer is also entitled 'to view the circumstances confronting him in light of his training and experience, and he may consider any suspicious conduct of the suspected person.'" Andrews v. Commonwealth, 37 Va. App. 479, 491, 559 S.E.2d 401, 407 (2002) (quoting James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996) (citation omitted)); see also Christian v. Commonwealth, 33 Va. App. 704, 714, 536 S.E.2d 477, 482 (2000) (en banc) (noting that "the unique perspective of a police officer trained and experienced in the detection of crime" is a relevant factor in judging the reasonableness of police conduct).

Additionally, "the officer does not have to be absolutely certain that the individual might be armed. If he reasonably believes that the individual might be armed, the search is warranted to protect himself or others who may be in danger." Simmons v. Commonwealth, 217 Va. 552, 556, 231 S.E.2d 218, 221 (1977).

Here, the evidence, in the light most favorable to the Commonwealth, established that, on the afternoon of May 31, 2001, Officer Hickson was a passenger in one of a group of four police vehicles patrolling the Clopton and Wise area, a high drug and crime area south of the James River in the City of Richmond. Officer Degraw was driving the marked police vehicle, and Officer Durham was seated behind Hickson. Officers Bender and Hatchett were in an unmarked vehicle in front of Hickson's vehicle, and two

-

other police vehicles were behind it.  All of the officers involved were in uniform displaying their badges of authority.

At 4:45 p.m., Hickson observed Pressley and two other individuals standing at the corner of Wise and Clopton Streets. Officers Bender and Hatchett stopped their vehicle on Clopton Street in front of Pressley.  Hickson, Degraw, and Durham stopped on Wise Street approximately fifteen to twenty feet behind Pressley.  Bender and Hatchett got out of their vehicle and began talking to the three individuals.  As the two officers approached the three individuals, Hickson observed that Pressley "had something in his left hand" and saw him "shove" it into "the back of his pants."  Hickson testified that, although he was unable to immediately identify the object Pressley put down his pants, he definitely saw Pressley's "cupped" left hand, which "appeared to have something in it," move in a "very, very deliberate motion" down inside the back of his pants.  Hickson further observed that, when Pressley pulled his hand back out of his pants, it was "empty."  Hickson then saw Pressley "immediately" use "both hands to pull his pants up and then his shirt down over [the object]."

Having both observed the same motions by Pressley, Degraw and Durham said, "watch his hands."  Believing they had just seen Pressley try to hide a "stash" of drugs in his pants, Hickson and Degraw got out of their vehicle and approached Pressley.

As he approached Pressley, Hickson observed that "there was a bulge in the back of [Pressley's] pants" where Pressley had just

-

put his left hand.  Noting that the bulge was "rather large," "about the size of [his] palm, maybe a little bit larger," Hickson became concerned that the bulge might be a weapon that Pressley had placed in his pants.  Hickson asked Pressley "what he had just put down his pants."  Pressley's only response was "what."

Hickson, who had made many drug arrests and recovered weapons in the area previously, knew there was always "a possibility of firearms" whenever drugs were involved.  Therefore, for his safety and the safety of the other officers and people around, Hickson put his hand to the back area of Pressley's pants where Hickson saw the bulge and did a protective pat-down with the palm of his hand.  Hickson testified that, upon feeling the object, he immediately knew it was narcotics because he felt a soft, crunchy plastic with a harder material inside.

At that point, Pressley became agitated and tried to put his hands in his pants.  Hickson then handcuffed Pressley and searched him.  Upon lifting Pressley's shirt, Hickson saw that Pressley had a pair of boxer shorts over which he had two pairs of shorts.  In between the two layers of shorts, Hickson retrieved a baggy containing seventy-six plastic baggy corners of an off-white rock material that subsequently proved to be crack cocaine.

Based on the totality of these circumstances, we conclude that Officer Hickson had reasonable cause to believe that Pressley was unlawfully in possession of illegal drugs or a concealed weapon and that the limited pat-down search for weapons was

-

warranted to protect Hickson and others who might be in danger. Hickson observed Pressley, who was standing on a street corner with two other individuals in a high drug and crime area, furtively conceal an object in the back of his pants when approached by two uniformed police officers. Hickson, who had made numerous drug arrests in the area, testified he first believed Pressley had put illegal drugs down his pants but, upon approaching Pressley to inquire further, became concerned that, in light of the size of the bulge it caused, the object was a weapon. Based on Pressley's suspicious conduct and his noncommittal answer to Hickson's inquiry asking what Pressley had just put down his pants, Hickson who, based on his knowledge and experience that guns were often involved with drugs in the area, reasonably inferred that the object in Pressley's pants was a weapon. See Brown v. Commonwealth, 15 Va. App. 232, 234 n.1, 421 S.E.2d 911, 912 n.1 (1992) (recognizing that "presence in a high crime area" is a factor that may be considered in assessing whether an investigatory stop is justified); Logan v. Commonwealth, 19 Va. App. 437, 445, 452 S.E.2d 364, 369 (1994) (en banc) (noting that "[t]he relationship between the distribution of controlled substances . . . and the possession and use of dangerous weapons is now well recognized").

We conclude, therefore, that because the circumstances provided Hickson an objective basis for suspecting Pressley was engaged in criminal activity and that he was armed and dangerous,

-

Hickson's limited pat-down search of Pressley for weapons was not in violation of Pressley's Fourth Amendment rights.[1]  Hence, the trial court did not err in denying Pressley's motion to suppress.

Accordingly, we affirm Pressley's conviction.

<u>Affirmed</u>.

---

[1] Because we find that Officer Hickson had a reasonable, articulable suspicion that Pressley was in possession of illegal drugs and was armed and dangerous, we do not address the Commonwealth's argument that the officers had probable cause to arrest Pressley and search him incident to arrest.