BENTON, J.,
with whom FITZPATRICK, C.J., ELDER and ANNUNZIATA, JJ., join, dissenting.
The United States Supreme Court’s recent decision in Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), could not be clearer. Without a dissent, the Court “h[e]ld that an anonymous tip lacking indicia of reliability ... does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm.” Id. at 274, 120 S.Ct. at 1380.
Rarely are the facts of two cases as congruent as the facts in J.L. and this case. As in J.L., the officer in this case received information from his dispatcher concerning a report from an anonymous person. As in J.L., “[s]o far as the record reveals, there is no audio recording of the tip, and nothing is known about the informant.” 529 U.S. at 268, 120 S.Ct. at 1377. As in J.L., the testimony indicates an anonymous informant said that a man brandished a firearm in a public place. See 529 U.S. at 268, 120 S.Ct. at 1377 (noting that an anonymous caller reported that a young man “was carrying a gun”). As in J.L., the testimony indicates the anonymous informant described the gender, race, and location of the accused, but did not explain “how he knew about the gun.” 529 U.S. at 271, 120 S.Ct. at 1378. As in J.L., the officer did not see a gun before detaining the man. Finally, as in J.L., *241 the circumstances surrounding the anonymous informant’s tip were not sufficient to negate the substantial risk of fabrication.
The similarities between J.L. and this case extend beyond the basic facts. Indeed, the present case presents the same Fourth Amendment concerns that troubled the Supreme Court. As in J.L., the officers’ suspicion that Jackson was unlawfully carrying a weapon arose solely from a call made from an unknown location by an unknown caller. Thus, I believe the majority misreads the import of J.L. when concluding that the decision turned upon a finding that the informant had not relayed to the police information about criminal conduct.[13] Answering “[t]he question ... whether an anonymous tip that a person is carrying a gun, is without more, sufficient to justify a police officer’s stop and frisk of that person,” 529 U.S. at 268, 120 S.Ct. at 1377, the Supreme Court expressly relied upon its prior decisions and held that, “[u]n-like a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, ... ‘an anonymous tip alone seldom demonstrates the informant’s basis of knowledge or veracity.’ ” Id. at 270, 120 S.Ct. at 1378 (quoting Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301 (1990)). Thus, on facts virtually identical to this case, the Court concluded the informant’s tip was not proved to be rehable and held that the tip’s allegation of an illegal posses *242 sion of a gun did “not justify a stop and frisk.” J.L., 529 U.S. at 274, 120 S.Ct. at 1380.
If, as the majority opinion here suggests, the issue in J.L. concerned the failure of the informant’s tip to convey evidence of criminal conduct, the resolution of that case would not have required any discussion about the informant’s reliability. In that circumstance, regardless of the informant’s reliability, the officer would not have had a reasonable suspicion that criminal activity was occurring and would not have had a basis to detain J.L. See Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968) (holding that a police officer may not detain a person for investigative purposes based on “his inchoate and unparticularized suspicion or ‘hunch’ ” that criminal activity may be occurring). See also Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Significantly, the Supreme Court’s decision in J.L. notes that “[a]part from the tip, the officers had no reason to suspect any of the three [men] of illegal conduct.” 529 U.S. at 268, 120 S.Ct. at 1377 (emphasis added). Therefore, the majority opinion’s assertion that the tip in J.L. failed to convey information about criminal conduct is simply wrong.
Explaining further the deficiency in the proof of the reliability of the informant’s tip, the Supreme Court noted the following:
The tip in the instant case lacked the moderate indicia of reliability present in White and essential to the Court’s decision in that case.... All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. If White was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line.
J.L., 529 U.S. at 271, 120 S.Ct. at 1379. Indeed, the Supreme Court engaged in an extended discussion of the anonymous informant’s reliability in J.L. precisely because the tip disclosed criminal conduct and might have supported a detention *243 if the informant was proved to be reliable. See Adams v. Williams, 407 U.S. 143, 146-47, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612 (1972).
Although all nine justices joined the J.L. opinion, see 529 U.S. at 274, 120 S.Ct. at 1380-81 (Kennedy, J., and Rehnquist, C.J. concurring, and noting “I join in the opinion in all respects”), the concurring opinion also refutes the interpretation the majority opinion in this case gives to J.L. Specifically, the concurring opinion posits as follows:
An anonymous telephone tip without more is different, however, for even if the officer’s testimony about receipt of the tip is found credible, there is a second layer of inquiry respecting the reliability of the informant that cannot be pursued. If the telephone call is truly anonymous, the informant has not placed his credibility at risk and can lie with impunity. The reviewing court cannot judge the credibility of the informant and the risk of fabrication becomes unacceptable.
On this record, then, the Court is correct in holding that the telephone tip did not justify the arresting officer’s immediate stop and frisk of respondent. There was testimony that an anonymous tip came in by a telephone call and nothing more. The record does not show whether some notation or other documentation of the call was made either by a voice recording or tracing the call to a telephone number. The prosecution recounted just the tip itself and the later verification of the presence of the three young men in the circumstances the Court describes.
529 U.S. at 275,120 S.Ct. at 1381.
In addition, the notion that the police could “infer that [the tip] ... came from a concerned citizen making a contemporaneous, eyewitness report” merely because the tip alleges “an open and obvious crime” is precisely the type of analysis that J.L. rejects. Nothing about such a tip provides a basis upon which anyone might conclude that the anonymous informant was honest or provided rehable information or was an eyewitness to the events or, for that matter, was a “concerned *244 citizen.” See Corey v. Commonwealth, 8 Va.App. 281, 288, 381 S.E.2d 19, 22 (1989) (noting that “[w]here courts have found a citizen-informant credible, he or she has usually been described with some particularity, such as ‘known by the affiant for many years,’ ... ‘[having] no known criminal record, a mature person, regularly employed, a college student in good standing [who] demonstrated truthful demeanor,’ ... ‘a mature person, regularly employed and absen[t] of any motivations to falsify,’ ... or a ‘law-abiding citizen, a respected businessman in the community, and one who,.in the past, had demonstrated a truthful demeanor’ ”). A plain reading of J.L. discloses that the Supreme Court, in a footnote, summarily disposed of the thesis advanced by the majority opinion in this case when the Court ruled that “[t]he mere fact that a tip, if true, would describe illegal activity does not mean that the police may make a Terry stop without meeting the reliability requirement.” J.L., 529 U.S. at 273 n. *, 120 S.Ct. at 1380 n. *. As in J.L., the tip in the present case lacks indicia of reliability.
The majority in this case accepts the Commonwealth’s suggestion to disregard J.L. and to rely on this Court’s decision in Scott v. Commonwealth, 20 Va.App. 725, 460 S.E.2d 610 (1995), to create some type of exception for guns. I believe that decision is not supportable. First, Scott was, in my view, wrongly decided, see 20 Va.App. at 730-32, 460 S.E.2d at 613-14 (Benton, J., dissenting and noting that “[t]he record in [Scott ] contains no basis upon which anyone could have determined that the invisible, unknown informant was reliable or had a basis to know anything other than the presence of the defendant, or someone similarly dressed, in the laundromat”). Second, Scott was decided in 1995, five years before its similar facts were presented to the Supreme Court in J.L. Third, in cases involving the application of constitutional principles, the Supremacy Clause, U.S. Const. Art. VI, cl. 2, does not allow state court decisions to trump decisions of the United States Supreme Court. Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 750-51, 115 S.Ct. 1745, 1747-48, 131 L.Ed.2d 820 (1995); Harper v. Virginia Dep’t of *245 Taxation, 509 U.S. 86, 100, 113 S.Ct. 2510; 2519, 125 L.Ed.2d 74 (1993); Kesler v. Department of Public Safety, 369 U.S. 153, 172, 82 S.Ct. 807, 818-19, 7 L.Ed.2d 641 (1962).
I would also note that the Commonwealth pursued, and the Supreme Court of Virginia rejected, an argument similar to that advanced in this case. See Harris v. Commonwealth, 262 Va. 407, 551 S.E.2d 606 (2001). There, as here, “the Commonwealth does not expressly concede the applicability of the holding in J.L. to the facts of this case.” Id. at 414, 551 S.E.2d at 609. There, as here, the Commonwealth argued that the anonymous informant’s tip about a gun provided a heightened justification to support a detention. Id. at 416, 551 S.E.2d at 611. Rejecting this Court’s decision that the officer could use the tip as a basis for conducting a frisk for the officer’s safety, see Harris v. Commonwealth, 33 Va.App. 325, 334, 533 S.E.2d 18, 22 (2000), the Supreme Court reversed the conviction. The Court noted that the officer’s detention of Harris was contrary to the ruling in J.L. and rejected the Commonwealth’s argument as one that “bootstraps the legitimate concern for law enforcement officers’ safety, which permits a protective search of a legally detained suspect, to serve as the basis for detaining the suspect.” Harris, 262 Va. at 416, 551 S.E.2d at 611.
The United States Supreme Court has specifically rejected the type of firearm exception that the Commonwealth argued in Harris, and now in this case, and that the majority opinion resurrects from Scott. The Court unambiguously held as follows:
[A]n automatic firearm exception to our established reliability analysis would rove too far. Such an exception would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target’s unlawful carriage of a gun.... If police officers may properly conduct Terry frisks on the basis of bare-boned tips about guns, it would be reasonable to maintain under the above-cited decisions that the police should similarly have discretion to frisk based on bare- *246 boned tips about» narcotics. As we clarified when we made indicia of reliability critical in Adams and White, the Fourth Amendment is not so easily satisfied.
J.L., 529 U.S. at 272-73, 120 S.Ct. at 1379-80 (citations omitted). These principles are equally applicable to a circumstance in which an anonymous informant says he observed the commission of an “open and obvious illegality.” Even in that circumstance, “[i]f the telephone call is truly anonymous, the informant has not placed his credibility at risk and can he with impunity.” Id. at 275, 120 S.Ct. at 1381 (Kennedy, J., and Rehnquist, C.J., concurring). In the absence of a “verifiable explanation of how the informant came to know of the information in the tip,” Ramey v. Commonwealth, 35 Va.App. 624, 631, 547 S.E.2d 519, 523 (2001), there still remains “a second layer of inquiry respecting the reliability of the informant that cannot be pursued.” J.L., 529 U.S. at 275, 120 S.Ct. at 1381 (Kennedy, J., and Rehnquist, C.J., concurring).
The Commonwealth’s reliance on cases from other jurisdictions to support its notion that the tip was reliable is equally unpersuasive. First, the informants in the two Wisconsin cases, State v. Williams, 241 Wis.2d 631, 623 N.W.2d 106 (2001), and State v. Rutzinski, 241 Wis.2d 729, 623 N.W.2d 516, 526 (2001), were not anonymous and were eyewitnesses. “[I]n stark contrast to Florida v. J.L., where nothing was known about the informant[,] ... the informant [in Williams] identified her location ... [as] 4261 North Teutonia.” 623 N.W.2d at 114. Indeed, the Supreme Court of Wisconsin noted that the informant “more than merely identified] her location, she repeatedly identified it as her home: ‘my house,’ ‘my apartment building,’ ‘our apartment.’ She also described the immediate surroundings: the alley, the parking lot on the side of her apartment building.” Id. Hence, the court concluded that “[e]ven though the caller did not identify herself, she did provide self-identifying information, that is, her address,” id., and she “made plain [by words and conduct] that she is an eyewitness.” Id. The court further noted that “[although the caller said that she did not Vant to get involved,’ by providing self-identifying information, she risked that her identity would *247 be discovered. Consequently, the 9-1-1 caller put her anonymity at risk.” Id. For these reasons, the court agreed with the concurrence in J.L. that if “an informant places his [or her] anonymity at risk, a court can consider this factor in weighing the reliability of the tip.” Williams, 628 N.W.2d at 114.
Similarly, the Supreme Court of Wisconsin held that the informant in Rutzinski “exposed him or herself to being identified” by “indicat[ing] to the police prior to the stop that he or she was in the vehicle in front of [the accused’s] pickup.” 623 N.W.2d at 525. Based upon the informant’s call to the dispatcher, the investigating officer waited in the informant’s direction of travel and saw both vehicles pass his location. Id. at 519. The court concluded that because “the informant understood that the police could discover his or her identity by tracing the ... license plates or directing the vehicle to the side of the road ... [and the informant] knew that he or she potentially could be arrested if the tip proved to be fabricated ..., this threat of arrest could lead a reasonable police officer to conclude that the informant is being truthful.” Id. at 525-26. Furthermore, the record in Rutzinski established that the informant stopped when the officer stopped the accused, and the informant spoke with the officer’s supervisor. Id. at 519. In addition, the record in Rutzinski makes abundantly clear the informant was an eyewitness to the events.
In the present case, unlike the Wisconsin cases, the informant did not reveal his or her location or give information likely to disclose his identity. Thus, without the risk of potential arrest, the informant provided a tip precisely like the tip in J.L. — patently unreliable.
Second, as in Rutzinski, the courts in the three other jurisdictions the Commonwealth relies upon ruled that “in contrast to the report of an individual in possession of a gun, an anonymous report of an erratic or drunk driver on the highway presents a qualitatively different level of danger, and concomitantly greater urgency for prompt action.” State v. Boyea, 171 Vt. 401, 765 A.2d 862, 867 (2000). See also United *248 States v. Wheat, 278 F.3d 722, 729 (8th Cir.2001) (same); State v. Walshire, 634 N.W.2d 625, 629 (Iowa 2001) (same). Thus, these cases present an issue of suspicion of drunken driving, which is not present in the case before us. In particular, Wheat identified the “qualitative” difference between reports of erratic driving and reports of gun possession as the opportunity for the police to “quietly observe the suspect ‘for a reasonable period of time without running the risk of death or injury with every passing moment.’” 278 F.3d at 729-30 (citation omitted). See also Boyea, 765 A.2d at 864 n. 2. Even assuming the validity of a distinction for anonymous reports of “drunk driving,” that circumstance is absent in the present case. Indeed, this absence of imminent danger in cases involving firearms is the precise reason the Supreme Court in J.L. refused to carve out a firearm exception. See 529 U.S. at 274, 120 S.Ct. at 1380-81. Cf. Boyea, 765 A.2d at 867 (holding that “a drunk driver[, contrary to someone possessing a gun,] is not at all unlike a ‘bomb’ ”). The Supreme Court of Vermont, therefore, was careful to recognize in the following passage that the United States Supreme Court left no room to quibble about the lack of a gun exception:
While acknowledging that guns are dangerous, the [United States Supreme] Court analogized the situation to one involving an anonymous tip concerning possession of narcotics. In either case the contraband could pose a potential public risk, but in neither is the danger particularly imminent. Thus, the Court rejected a rule that would have dispensed with the requirement of reliability “whenever and however” the information involved a gun. J.L., [529 U.S. at 274, 120 S.Ct. at 1380]. At the same time, however, the Court carefully limited its holding to the facts, declining to “speculate” about situations involving other types of dangers, such as a report of a person carrying a bomb. Id.
Boyea, 765 A.2d at 867.
In summary, I would hold that the United States Supreme Court has unanimously rejected the Commonwealth’s hypothesis that there exists an “imminent danger” exception for firearms, and the Court “demand[s]” an “indicia of reliability *249 ... for a report of a person carrying a firearm.” J.L., 529 U.S. at 274, 120 S.Ct. at 1380 (emphasis added). Because this case is clearly controlled by the Supreme Court’s decision in J.L., I would reverse the conviction. Therefore, I dissent.

. Significantly, the majority opinion recognizes that it is not a crime to possess a gun in Virginia. No statute prohibits an adult who is not a felon from openly displaying a gun. Moreover, Virginia decisions arguably suggest that the informant's tip in this case made no reliable assertion of illegality because the mere report that a person "brandished” a gun is not sufficient to allege the person has committed a criminal offense under Code § 18.2-282. "The gravamen of the offense [under Code § 18.2-282] is the inducement of fear in another.” Kelsoe v. Commonwealth, 226 Va. 197, 199, 308 S.E.2d 104, 104 (1983). See also Bailey v. Commonwealth, 5 Va.App. 331, 335 n. 1, 362 S.E.2d 750, 751 n. 1 (1987) (noting that Code § 18.2-282 is not implicated if a weapon is brandished and "there is no evidence that fear by the victim was intended or resulted”). Thus, "pointing or brandishing a firearm” is only one of two elements of the offense. Kelsoe, 226 Va. at 198, 308 S.E.2d at 104.