COURT OF APPEALS OF VIRGINIA

Present:    Judges Benton, Frank and Felton
Argued at Chesapeake, Virginia


JASON ANDRE WILLIAMS

MEMORANDUM OPINION[*] BY
v.        Record No. 0783-04-1          JUDGE JAMES W. BENTON, JR.
                                         MARCH 29, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

(Theophlise L. Twitty; Jones & Twitty, on brief), for appellant.
Appellant submitting on brief.

Alice T. Armstrong, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


The trial judge convicted Jason Andre Williams of possessing a firearm after previously

having been convicted of a felony.  Code § 18.2-308.2.  Williams argues police officers lacked

reasonable suspicion to seize him because they acted solely upon an anonymous tip.  He contends,

therefore, that the trial judge erred by denying his motion to suppress the evidence and that absent

the evidence obtained from this seizure the record is insufficient to support the conviction.  We

affirm the judge's rulings.

I.

The evidence proved that at 1:45 a.m., the Newport News police dispatcher directed Officer

Sonia Hale to the area of 3500 Marshall Avenue in response to a telephone call, reporting that a man

was shooting at a vehicle.  The caller described the shooter as a young man wearing a gray hooded

sweatshirt and faded blue jeans.  Officer Hale testified that she did not recall whether the dispatcher

---
[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

mentioned the race of the man. Officer Gray, who also heard the dispatch and went to investigate, testified that the description of the man indicated his race. As the dispatcher continued to relay information about the man, Officer Hale approached the corner of 35th Street and Marshall Avenue. Officer Hale testified that Marshall Avenue and the side streets were lit by streetlights. There, she saw a man jogging with a hood over his head as if to shield his face. The man fit the caller's description and later was identified as Jason Andre Williams.

Williams looked toward Officer Hale's vehicle, removed the hood from his head, and began to walk slowly. Officer Hale notified two other officers of Williams's location and informed them that Williams was the only person in that area. After Williams had traversed one block, Officer Gray drove in front of Williams and told him to stop and put his hands on the car. Officer Hale drew her weapon and exited her vehicle. When the officers asked Williams if he had any weapons, he said he did not. While Williams had his hands on the car, Officer Gray frisked him and found a gun tucked in the waistband of Williams's pants under his jacket. The gun contained three cartridges. The officers then arrested Williams.

As these events were occurring, the caller remained on the telephone with the dispatcher. While Officers Gray and Hale were detaining Williams, Officer Morrissey went to the caller's residence. The caller, an elderly woman, told Officer Morrissey she reported the shooting. She also told Officer Morrissey she did not want to give her name and did not want to be involved.

After Officer Hale arrested Williams and was taking him to her vehicle, Williams made statements about the gun. Originally, Williams said the gun was not his and suggested the officers had found the gun on the ground. Williams then said he had paid $1,200 for the gun and he is "proficient and . . . shoot[s] it every day." In the vehicle, Williams told the officers they "might as well go check the woods or the grassy areas over there by the railroad tracks, because [he] shot some guy and [the person] might be bleeding to death."

Denying Williams's motion to suppress, the trial judge found that the officers had reasonable suspicion to justify detaining Williams for questioning and that the officers were justified in frisking Williams for a gun because the report indicated a gun had been fired.  At the conclusion of all evidence, the judge convicted Williams of possessing a firearm after previously having been convicted of a felony in violation of Code § 18.2-308.2.

II.

Williams contends that the police unlawfully seized him because they acted solely upon a report from an anonymous caller.  He argues that this seizure was akin to the seizures condemned in cases such as Florida v. J.L., 525 U.S. 266 (2000), and Harris v. Commonwealth, 262 Va. 407, 551 S.E.2d 606 (2001).

In J.L., 529 U.S. 266, the United States Supreme Court succinctly posed the issue raised by a "stop and frisk" based on an anonymous tip.

> "[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him."
>
> In the instant case, the officers' suspicion that [the accused] was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller.  Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity."

Id. at 269-70 (citations omitted).  See also Harris, 262 Va. at 416-17, 551 S.E.2d at 611 (holding that a detention based solely upon an anonymous tip alleging criminal conduct was not supported by reasonable, articulable suspicion of criminal conduct).

The application of these principles assumes, of course, that the telephone caller is "truly anonymous," J.L., 525 U.S. at 275 (Kennedy, J., joined by Reinquist, C.J., concurring), as was the circumstance existing in J.L. and Harris, and that, therefore, the tip lacked reliability.  The record in this case establishes, however, that the telephone caller was not "truly anonymous" as that term is ordinarily understood.  The police officers knew the precise location of the caller's residence.  Indeed, one officer went to the caller's residence, saw the caller, and there personally talked to her.  As Justice Kennedy noted in his concurring opinion in J.L., "[i]t seems appropriate to observe that a tip might be anonymous in some sense yet have certain other features, either supporting reliability or narrowing the likely class of informants, so that the tip does provide the lawful basis for some police action."  J.L., 525 U.S. at 275.

This case bears a similarity in many respects to the circumstances we addressed in Reed v. Commonwealth, 36 Va. App. 260, 549 S.E.2d 616 (2001).  There, the police dispatcher received a telephone call from a person who did not give a name.  We analyzed the circumstances as follows:

> We do not have a wholly "anonymous tipster" as that term is contemplated by the Supreme Court in J.L. . . . and the evidence partially corroborated the tipster's report that a crime had occurred. The informant in this case was a disinterested citizen who had just witnessed a crime.  The informant contacted the police dispatcher by way of his cellular phone, and while the record is silent as to whether the caller immediately provided his identity to the dispatcher, he stayed on the line as he followed appellant and provided the dispatcher with updates on the location of appellant and his companion.  The caller also stayed in communication with the dispatcher as the dispatcher relayed his report to [the] Officer . . . and as [the] Officer . . . approached appellant.

Id. at 268, 549 S.E.2d at 620.

We deemed the circumstances in Reed to be akin to Adams v. Williams, 407 U.S. 143 (1972), where the informant was not anonymous and the informant's reliability was enhanced because "[t]he informant . . . came forward personally to give information that was immediately verifiable at the scene." Id. at 146. Indeed, we noted in Reed that "if the informer is a disinterested citizen who is either a victim of or eyewitness to, a crime, police properly may give more weight to the informer's information than they would to information from a "criminal" informer, whose motives are less likely to be pure. 36 Va. App. at 267-68, 549 S.E.2d at 619-20. The record in this case similarly establishes that the police dispatcher and the investigating officers had objective reasons to believe the caller was reliable. As in Reed, the evidence proved the caller was an elderly person who was a "disinterested citizen" and an "eyewitness" to the events. 36 Va. App. at 267, 549 S.E.2d at 619-20. She reported seeing a man shoot at a car and described the man in detail.

The caller's continued presence on the telephone as the encounter unfolded established her reliability. As Officer Hale testified, the caller was "providing . . . updated information at the time [the officers] actually approached [Williams]." The officers corroborated the information she was providing. While the dispatcher was relaying information about the event and while the caller was on the telephone, the first police officer was in the vicinity and quickly arrived at the intersection where the caller said the shooting occurred. The officer immediately saw Williams jogging from the area of the reported shooting, and the officer saw no other person in the area. Williams tried to hide his face and then changed his run to a walk in an attempt to avoid detection. The evidence further established that the caller remained on the telephone during the entire encounter between the officers and Williams.

Dispelling any suggestion that the caller was anonymous, the evidence proved that a police officer went to the caller's residence and spoke with her while the officers were detaining

Williams. In view of the information the police knew about the caller and the officer's personal contact with her, the caller's expressed desire to remain unnamed does not render her anonymous. We hold that the totality of the circumstances was sufficient for the trial judge to conclude the caller was reliable. Accordingly, the trial judge did not err in denying the motion to suppress.

We further hold that, in view of the proof that Williams possessed the gun and that he was a convicted felon, the evidence was sufficient to prove beyond a reasonable doubt the elements of Code § 18.2-308.2. Accordingly, we affirm the conviction.

<u>Affirmed.</u>