HUMPHREYS, J.,
dissenting.
Because I believe that Ewell v. Commonwealth, 254 Va. 214, 491 S.E.2d 721 (1997), and Harris v. Commonwealth, 262 Va. 407, 551 S.E.2d 606 (2001), control the outcome of this case, I would hold that the trial court erred in denying Raab’s motion to suppress. Accordingly, I respectfully dissent.
“A police officer may stop and detain a person ‘for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.’ ” Ford v. Commonwealth, 28 Va.App. 249, 255, 503 S.E.2d 803, 805 (1998) (quoting Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). “In order to justify the stop, the fourth amendment requires that the officer have a ‘reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.’” Woodson v. Commonwealth, 14 Va.App. 787, 792, 421 S.E.2d 1, 4 (1992) (quoting Moss v. Commonwealth, 7 Va.App. 305, 307-08, 373 S.E.2d 170, 172 (1988)). In my view, appellate courts have occasionally blurred the dis *586 tinetion between probable cause to support an arrest or search and the much lesser standard of reasonable suspicion that a crime has occurred, is occurring, or is about to occur, thereby constitutionally justifying a brief investigative detention. Nevertheless, we are bound by the Supreme Court’s decisions in Ewell and Harris.
In the present case, a police officer spotted three vehicles in the parking lot of a restaurant at 12:40 a.m. The restaurant “appeared” to be closed for the evening, and had a “patrons only/towing enforced” sign posted. The restaurant was not in the officer’s normal patrol area, and the officer did not testify as to whether he knew what time the restaurant closed. The officer testified that he pulled into the lot to inquire why the individuals were in the parking lot after hours. As the officer pulled in to the parking lot, “[he] scanned the parking lot real quick and [Raab’s] vehicle was backing out from the spot where he was.” The officer then pulled up and parked perpendicular to Raab’s vehicle to prevent him from exiting the lot in order to investigate Raab’s reason for being on the property.[4] The Commonwealth argues, and the majority holds that the officer in this case had a reasonable, articulable suspicion to believe that Raab was trespassing. Because of the precedent set forth in Ewell and Harris, I must disagree.
In Ewell, the Virginia Supreme Court held that a police officer was not justified in stopping and detaining the operator of a vehicle that he suspected of trespassing. The officer worked part-time as a security guard for an apartment complex when he was off-duty. Ewell, 254 Va. at 215, 491 S.E.2d at 722. He was “employed primarily to enforce the complex’s policy against trespassing.” Id. At the entrance to the complex, there was a “ten-by-five foot, lighted sign stating ‘no trespassing.’ ” Id. The officer testified that, “he was familiar with most of the complex’s residents and their automobiles,” and “was concerned because it was [12:30 in the morning] and the car was parked in front of an apartment suspected of ‘high *587 narcotics’ trafficking.” Id. at 216, 491 S.E.2d at 722. “Additionally, the operator of the car attempted to leave the parking lot immediately upon [the officer’s] arrival in his marked vehicle.” Id. Because the officer recognized neither Ewell nor her vehicle, he stopped the vehicle “to inquire whether its operator was trespassing.” Id. The Court held that the officer’s perceptions and suspicions were no more than a hunch, falling short of the reasonable, articulable suspicion required for a stop. Id. at 217, 491 S.E.2d at 723.
In Hams, the Virginia Supreme Court held that a police officer was not justified in conducting a non-consensual stop of an individual that the officer believed was “possibly trespassing” at an apartment complex. Harris, 262 Va. at 410, 551 S.E.2d at 607. The officer was familiar with most residents of the apartment complex and their regular visitors because he had “worked for two and one-half years in a drug elimination program” at the complex. Id. A “no trespassing” sign was posted on at least one of the buildings in the complex. Id. The officer observed three men standing near a bench that had previously been used as a bus stop which was a “short distance” from the “no trespassing” sign. Id. The officer conducted a non-consensual stop of the men because he did not recognize them as residents or regular visitors of the complex and believed they were “possibly trespassing.” Id. Citing Ewell, the Supreme Court of Virginia held that the officer “lacked a sufficient reasonable, articulable suspicion” that the individuals were trespassing. Id. at 417, 551 S.E.2d at 611. The Court compared the factual situation in Harris to that in Ewell, noting that “each officer had no more than an ‘unparticularized suspicion or “hunch” ’ that criminal activity was afoot. As such, each officer’s subjective belief that the individual might be a trespasser was not sufficient to warrant a non-consensual investigatory detention.” Id. at 416, 551 S.E.2d at 611 (quoting (Terry, 392 U.S. at 27, 88 S.Ct. at 1883).
The majority attempts to distinguish the instant facts from those in Ewell. The distinction the majority makes between this case and Ewell or, for that matter, Harris is, in my view, one without a difference. In essence, the majority holds that *588 because an apartment complex does not close and a restaurant does, it is more reasonable to assume that Raab was not lawfully in the parking lot. In other words, the majority holds that Raab’s mere presence in the parking lot of a closed restaurant at 12:40 in the morning is a sufficient “particularized and objective basis” for suspecting that Raab was trespassing. The majority reasons that because “no facts suggested Raab was a patron,” and because “a restaurant closed to patrons cannot be patronized ... [i]t reasonably follows that Raab was likely a non-patron subject to the restaurant’s patrons-only restriction on access to the parking lot.” Although this may be true, this singular fact, applied against the precedent set forth in Ewell and Harris, is insufficient as a matter of law to support a finding of reasonable suspicion.
In Ewell, the officer conducting the stop was familiar with most residents of the complex, and their vehicles, but he did not recognize Ewell or her car. He knew that the apartment in front of which the car was parked was a high drug-trafficking area. Furthermore, when the officer arrived in a marked car, Ewell immediately attempted to leave. Based on his knowledge and the attendant circumstances, the officer had several reasons to believe that Ewell was trespassing. However, the Virginia Supreme Court found that these facts were insufficient to support a reasonable suspicion that Ewell was trespassing.
In Harris, the officer making the stop was also familiar with the location where the stop occurred. He had been involved in a drug elimination program at the apartment complex for over two years. The officer knew most of the residents and their regular visitors but did not recognize Harris. The officer saw Harris and two other men loitering near a bus stop that was no longer in use. In other words, the bus stop was closed. Based on that knowledge, the officer believed that Harris was “possibly trespassing.” However, the Virginia Supreme Court held that the facts were insufficient to support a reasonable suspicion that Harris was trespassing. In both Ewell and Harris, the Supreme Court held that the informa *589 tion available to the officer could give rise to no more than a “hunch” that the suspected individuals were trespassing.
In this case, the officer’s only basis for reasonable suspicion was that Raab was leaving the parking lot of an apparently closed restaurant. However, unlike in Ewell, there is no evidence that Raab’s attempt to leave was in response to the officer’s arrival. Furthermore, unlike the officers in both Ewell and Harris, the officer here was not particularly familiar with the location of the stop. The restaurant was not in the officer’s “normal patrol” area. The record also does not indicate what time the restaurant closed or that the officer had that information available to him. When the officer arrived, Raab was pulling out of his parking spot and the two other vehicles were apparently preparing to leave as well.[5] As such, it is equally likely, in viewing the totality of the circumstances, that Raab was the restaurant’s owner, an employee, or a late departing patron and, thus, lawfully on the premises. Thus, it is apparent that the officer here had even less reason to be suspicious of criminal activity than the officers in Ewell and Harris.
Because an officer’s familiarity with the residents of a complex, and the presence of drug-trafficking, coupled with the defendant’s attempt to leave the complex upon the officer’s arrival, is insufficient to support a finding of reasonable suspicion, see Ewell, 254 Va. 214, 491 S.E.2d 721; Harris, 262 Va. at 410, 551 S.E.2d at 607, I do not believe that the facts in this case rise any higher than a similar “hunch.” Accordingly, I would hold that under Ewell and Harris, the trial court erred in denying the motion to suppress, and I would reverse and remand for a new trial if the Commonwealth be so advised.

. The other vehicles left while the officer was conducting the stop of Raab's vehicle.

. Both of the other vehicles left while the officer spoke with Raab.