### Richmond

## GLENN EDWARD SIMMONS V. COMMONWEALTH OF VIRGINIA.

January 14, 1977.

Record No. 760429.

Present, All the Justices.

*Jonathan C. Kinney (Kinney & Smith,* on briefs), for plaintiff in error.

*James E. Kulp, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

I'ANSON, C.J., delivered the opinion of the court.

Defendant, Glenn Edward Simmons, was indicted for grand larceny. After waiving trial by jury, defendant was found guilty of petit larceny and sentenced to eight months in jail.

The sole issue before us is whether the trial court erred in overruling the defendant's motion to suppress certain evidence, a tape recorder, on the ground that it was the product of an unlawful search and seizure.

The evidence shows that about 2:30 p.m. June 26, 1975, John Gillen, a uniformed police officer assigned to patrol duty in Rosslyn, Arlington County, responded to a complaint of a suspected "burglary" in a restricted area of the Xerox office building. Upon arrival Gillen interviewed the complainant who described the "prowler" as a Negro male, about 5′6″ to 5′8″ tall, dressed in a blue and white warm-up suit and sneakers. Gillen was told that when the prowler was asked his business, he left the building immediately without any explanation. So far as the complainant could determine, nothing had been taken.

Gillen then proceeded to make a routine check at the bank three blocks away. While there, he saw a young Negro male, matching the description of the prowler, walk in front of the bank. Gillen immediately left the bank and while approaching the defendant noticed that the defendant's warm-up jacket was sagging in the front. It appeared to Gillen that something was in the pocket of the jacket. Believing the object to be a weapon and that he might be in danger, he first radioed for assistance and then confronted the defendant and conducted a "pat down" search of the defendant's outer clothing to determine whether he was armed. Feeling a hard object, which he believed might be a weapon, in the pocket of the warm-up suit, he removed it. The hard object was a pocket tape recorder bearing a sticker indicating that it was the property of the Bendix Corporation, which was located approximately 50 feet from the place where the confrontation occurred. When the defendant refused to tell where he had obtained the tape recorder, Gillen placed him under arrest.

Gillen further testified that he had been a uniformed foot patrolman in the Rosslyn area of Arlington County since April, 1975, and he had previously worked in that area by scout car and motorcycle. Rosslyn is a high-rise business community. The

defendant was the first and only person that Gillen had ever seen in the area wearing a color-coordinated warm-up suit. Rosslyn's characteristic crimes were bank robbery and larceny from automobiles and office buildings. Gillen had confronted suspects in these types of crimes about two dozen times in Rosslyn and in three to six of those confrontations, he had found the suspects to be armed.

Defendant contends that the officer's action in stopping him was not justified at its inception because there was no indication of the identity and reliability of the informant, and that the officer's actions were unreasonable under the standards set out in *Terry* v. *Ohio*, 392 U.S. 1 (1968) and Code § 19.1-100.2, now § 19.2-83. Hence, he argues that because the "stop and frisk" was unlawful, the tape recorder should have been suppressed.

In *Terry*, the Supreme Court held that when "a police officer observes unusual conduct which leads him reasonably to conclude in the light of his experience that criminal activity may be afoot" and that the suspect "may be armed and presently dangerous," and he identifies himself to the suspect, then he is entitled to conduct a limited search of the suspect's outer clothing for the purpose of discovering weapons. *Terry*, at 30. Such an on-the-street frisk may not be based on the officer's "hunch." Rather, it must be justified by "specific reasonable inferences." *Id.* at 27. The test for evaluating the reasonableness of those inferences incorporates both the circumstances as the officer perceived them at the time of the frisk and the officer's own unique experience and ability to discern suspicious and dangerous situations. *Id.* at 5.

The principles announced in *Terry* were expanded and explicated in *Adams* v. *Williams*, 407 U.S. 143 (1972). There the Court said:

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts

known to the officer at the time." 407 U.S. at 145-146. (citations omitted).

In *Howard* v. *Commonwealth*, 210 Va. 674, 677, 173 S.E.2d 829, 832 (1970), we said:

"When a person is observed by a law enforcement officer under suspicious circumstances he is not clothed with the right of privacy which prevents a police officer from inquiring into his identity and actions. The welfare of the public demands that a law enforcement officer use his faculties of observation and act thereon within proper limits. It is not only the right, but the duty, of a police officer to investigate suspicious conduct, and he may 'in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.'" Citing *Terry*, 392 U.S. at 22.

Applying the principles set out in *Terry, Adams,* and *Howard* to the instant case, we believe Officer Gillen was justified in stopping the defendant for purposes of investigating his suspicious behavior even though there was no probable cause to make an arrest. Prior to stopping the defendant, Gillen had responded to a call from a person connected with the Xerox company who reported the suspicious activity of a man answering the description of the defendant. This information carried enough indicia of reliability to justify Gillen's forcible stop of the defendant for the purpose of investigating his suspicious activity in the Xerox building.

Thus we reject defendant's argument that reasonable cause for a "stop and frisk" must be based solely on the officer's observation, rather than, in part, on information furnished by another person. When a person seeks immediate police assistance and gives a description of the suspected criminal agent, as here, "the subtleties of the hearsay rule should not thwart an appropriate police response. "*Adams,* 407 U.S. at 147.

Defendant argues that the "frisk" was unwarranted because Officer Gillen was without any specific knowledge that the defendant was armed and dangerous. We do not agree.

When an officer has reason to believe that a suspect is armed and dangerous, he may conduct a superficial weapons search.

*Adams,* 407 U.S. at 145; *Terry,* 392 U.S. at 27. The officer does not have to be absolutely certain that the person is armed. If he reasonably believes that the individual might be armed, the search is warranted to protect himself or others who may be in danger. *Sibron* v. *New York,* 392 U.S. 40, 65 (1971); *Terry,* 392 U.S. at 27.

In light of the information obtained by Officer Gillen from the informant, his experience as an officer in the Rosslyn area, and his observance of defendant's warm-up jacket sagging in the front, the officer had reasonable cause to believe that defendant might be carrying a concealed weapon and the search was warranted to protect himself and others who might be in danger.

We do not agree with defendant's additional argument that the frisk was unwarranted because Officer Gillen did not give defendant an opportunity to explain his conduct before the search. A police officer should not be required to ask of a person whom he reasonably suspects is engaging in criminal activity or is about to commit a serious crime, to explain his conduct and run the risk of receiving a bullet in answer to his questions. *Terry* at 33 (Harlan, J., concurring).

■ The fact that the object removed from defendant's pocket was not a weapon is not controlling. To justify its removal, it was only necessary that the officer reasonably believed that the object could be a weapon. *People* v. *Allen,* 50 Cal. App. 3d 896, 901, 123 Cal. Rptr. 80, 83 (1975).

■ Defendant next argues that Officer Gillen's action in stopping and searching him for weapons was not justified under Code § 19.1-100.2, now § 19.2-83.

After the Supreme Court's ruling in *Terry* and our decision in *Howard,* the General Assembly, at its 1970 session, enacted a "stop and frisk" law which reads as follows:

> "Any police officer may detain a person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony *or possesses a concealed weapon* in violation of § 18.1-269 (now § 18.2-308) and may require of such person his name and address. *Provided further, that such police officer may, if he reasonably believes that such person intends to do him bodily harm, search his person for a dangerous weapon . . . .*" Code § 19.1-100.2 as amended (now Code § 19.2-83). (Italics supplied).

It is true, as defendant contends, that the language in that part of our statute which permits a police officer to stop a person whom he reasonably suspects is committing, has committed, or is about to commit a felony is more stringent than the requirement stated in *Terry*: "where a police officer observes unusual conduct which leads him reasonably to conclude in the light of his experience that criminal activity may be afoot . . . ." 392 U.S. at 30. However, the statute permits a police officer to stop a person whom he reasonably suspects possesses a concealed weapon, and if he reasonably believes that such person intends to do him bodily harm, he may "search" the suspect's person for a dangerous weapon.

Before Officer Gillen approached the defendant, he radioed for assistance. He stated from his experience as a police officer in the Rosslyn area and from defendant's appearance, he suspected that the defendant possessed a concealed weapon, and that he feared the defendant would do him bodily harm when he confronted him. The officer's suspicions and fears justified his failure to inquire of the defendant his name and address before the "frisk." This did not amount to a denial of defendant's rights under the statute. *People* v. *Hayden*, 380 N.Y.S.2d 770, 39 N.Y.2d 824, 385 N.Y.S.2d 767 (1976). Hence, we hold that the officer's actions in stopping the defendant, immediately "patting him down," and taking the "hard" object from his pocket were lawful under the statute.

For the reasons stated, we hold that Officer Gillen did not violate defendant's Fourth Amendment rights in stopping and frisking him. Because the search was lawful and defendant's possession of the tape recorder was unexplained, the seizure was lawful, and the trial court properly overruled defendant's motion to suppress the evidence.

Accordingly, the judgment is

*Affirmed.*