# CIRCUIT COURT OF THE CITY OF WINCHESTER

Commonwealth of Virginia

v.

Richards

January 13, 1987

Case No. (Criminal) 86-CR-328

By JUDGE HENRY H. WHITING

The Court has before it a suppression motion seeking to exclude the introduction of evidence of drugs seized from the defendant by the police after he left the Winchester labor camp and was arrested for trespassing therein.

The evidence showed that there were a number of no trespassing signs to unauthorized personnel in the camp visible to the defendant when he entered the camp, stayed a short time, and, as he was leaving, one of the police officers acting as a stakeout to detain and arrest trespassers in the labor camp called other police officers on the radio to arrest the defendant as he was leaving the labor camp. Those other officers acted pursuant to the call, arrested the defendant some distance away from the officer and while patting him down incident to the arrest found a glass vial containing an illegal drug in the left pocket of his jogging shorts. The "stakeout" officer also testified that he had been there for several weeks assigned to try to stop the flow of drugs in and out of the labor camp by arresting unauthorized personnel entering and leaving the camp. Although the defendant now says he was invited in the camp, he never told the police officers that when he was arrested and he could

not identify the person who had invited him other than by the name "Pipsy" and had no idea where he worked or could locate him at this time. The officers who arrested the defendant said that two young women were waiting in a car parked along the curb on the other side of the street and started the engine as he approached, and when he testified he admitted that they were waiting there to pick him up as he left.

The Commonwealth urged the following theories at the hearing:[1]

(1) A stop and frisk search.

The argument is made that the police officers reasonably suspected that the defendant may have been transporting drugs out of the labor camp, given the past difficulties of the flow of drugs in and out of the camp. It was claimed then that apart from the fact that this was not the reason assigned when the defendant was stopped,[2] the evidence is clearly insufficient to indicate " 'unusual conduct which leads [the police officer] reasonably to conclude in the light of his experience that criminal activity may be afoot' and that the suspect then 'may be armed and presently dangerous. . . [justifying] a limited search of the suspect's outer clothing for the purpose of discovering weapons'." *Simmons* v. *Commonwealth,* 217 Va. 552, 554 (1977), quoting *Terry* v. *Ohio,* 392 U.S. 1 (1968). "Such an on-the-street frisk may not be based on the officer's 'hunch.' Rather it must be justified by 'specific reasonable inferences'." *Terry* at 27. "The test for evaluating the reasonableness of these inferences incorporates both the circumstances as the officer perceived them at the time of the frisk and the officer's unique experience and ability to discern suspicious and dangerous situations." *Id.,* at 5. *Ibid.*

*Simmons* points out that the *Terry* principles were expanded in *Adams* v. *Williams,* 407 U.S. 143 (1972), in holding that the officer need not have probable cause to arrest in order to stop and frisk but in suspicious circumstances he may approach a person for purposes of

---

[1] The defendant cited several cases in support of his theory; the Commonwealth has cited none.

[2] He was being arrested for trespassing.

investigating possible criminal behavior even though there is no probable cause to make an arrest. *Simmons* at 555. *Sibron* v. *New York*, 392 U.S. 40 (1968), held that merely because a defendant was talking to drug addicts several times did not give rise to the required reasonable suspicion that the defendant had committed a felony authorizing a search but was based on a mere hunch and not upon facts supporting a reasonable suspicion that the person had committed an offense. The fact that the stop was invalid means that the officer could not legally frisk the defendant. *Ibid*. Moreover, even if the stop had been valid and a limited frisk authorized the Virginia statute precludes any such frisk for weapons unless the "police officer. . . reasonably believes that such person intends to do him bodily harm. . ." Virginia Code Section 19.2-83. There was no evidence whatever introduced that any of the police officers thought this defendant intended to do them bodily harm and, in fact, the defendant's scanty clothing gave rise to no reason to believe he concealed a weapon therein, the object procured from him being described as a small vial about the size of a Bic cigarette lighter. One police officer said it might have been a weapon, the other officer said he had never seen a weapon of that size.

(2) The next ground assigned is that the search was authorized as incident to an arrest for a felony.

However, before a search is authorized the arrest must have been an authorized arrest, otherwise the search is invalid. *Leatherwood* v. *Commonwealth*, 215 Va. 161 (1974) (search made after an arrest based on an alleged probation violation when the term of probation had expired). Since this was an arrest without a warrant the Commonwealth had the burden of establishing probable cause therefor, *Brinegar* v. *U.S.*, 338 U.S. 160 (1949), and the standards for determining probable cause are at least as strict as those applied to a magistrate's decision as to whether a warrant should issue. *Washington* v. *Commonwealth*, 219 Va. 857 (1979). The Commonwealth urges that the search was upon probable cause to believe that the defendant was participating in a felony. The mere fact that he was in the labor camp and left it did not give the police probable cause to believe that he was taking drugs out of the camp. The police may have had a hunch that this was the situation but that hunch is insufficient

to establish probable cause. The test of probable cause is even higher than the reasonable suspicion test for a stop and frisk and requires that the facts and circumstances within the arresting officer's knowledge, which are based on reasonably trustworthy information, are sufficient in and of themselves to warrant a man of reasonable caution to believe that a crime has been or is being committed. *Brinegar* at 175-176; *Ybarra* v. *Illinois*, 444 U.S. 85 (1985) (no probable cause to search patrons of a bar being searched upon a search warrant for evidence of drug dealing by its employees); *Reid* v. *Georgia*, 448 U.S. 438 (1980) ("no reasonable and articulable suspicion that the person seized is engaged in criminal activity," *id.*, at 440, but citing an insufficient basis for an alleged "drug courier" profile). Clearly no probable cause existed for this arrest merely upon suspicion that this defendant might be taking drugs from the labor camp.

(3) A third contention is made by the Commonwealth that this was an arrest incident to a misdemeanor charge of trespassing.

The authority for any such arrest is said to be contained in Virginia Code § 19.2-81. A careful reading of that statute indicates no such authority for the arrest for such a misdemeanor not committed in the presence of the officer. Officer Millholland is the officer who saw the defendant trespassing but he did not make the arrest nor was it made in his presence. He called other officers on the radio who were waiting down the street to arrest the defendant, but the "alleged misdemeanor [was] not committed in their presence" and there was no radio message indicting that a warrant for the offense was on file in the department. While perhaps an argument might have been made that Officer Millholland made the other officers his agents for accomplishing the arrest since he could not leave his place of surveillance, the Court need not decide that issue since that contention was not made nor was there any evidence introduced to show that Officer Millholland could not have made the arrest himself; in fact, the evidence showed that he came up to the scene of the arrest shortly after it was made, which would indicate that there was no reason he could not have driven down the street and made the arrest himself.

The basis for this opinion is concisely stated in *Bryson* v. *Commonwealth,* 211 Va. 85, 86 (1970), in the following language:

> A law enforcement officer may lawfully arrest, without a warrant, for a felony or upon "reasonable suspicion" that a felony has been committed by the arrested person. *Muscoe* v. *Commonwealth,* 86 Va. 443, 10 S.E. 534 (1890). *See also Byrd* v. *Commonwealth,* 158 Va. 897, 164 S.E. 400 (1932).
>
> The test of constitutional validity is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense had been committed. *Brinegar* v. *United States,* 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *Fierst* v. *Commonwealth,* 210 Va. 757, 173 S.E.2d 807 (1970). If the arresting officer had no probable cause to arrest then he could not lawfully search the defendant's person. *Rios* v. *United States,* 364 U.S. 253, 80 S. Ct. 1431, 4 L. Ed. 2d 1688 (1960). *But see Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). (An exception to the rule, inapplicable here, arises when the officer has reasonable grounds to believe that the defendant is armed and dangerous.) *Id.,* at 86-87.

The Court is reluctant to suppress any evidence, believing that wherever possible all evidence should be brought forth for consideration by the jury, especially evidence such as that proffered in this case of possession of illegal drugs, but the constitutional and statutory rights of the defendant require that the evidence be seized in a proper manner and the Commonwealth has failed to introduce evidence which does justify the seizure of the evidence in question. Wherefore, the motion to suppress must therefore be sustained.