## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Brian St. Louis

March 26, 2003

Case No. (Criminal) No. 02-86

BY JUDGE EDWARD L. HOGSHIRE

Brian St. Louis is charged with possession of marijuana with intent to distribute. Defendant has filed a motion to suppress evidence. After a hearing *ore tenus*, review of the brief submitted by the Commonwealth, and oral argument, the Court concludes that the motion should be denied for the reasons articulated below.

*Statement of Facts*

On January 1, 2002, Officers Lynette Delgado and Joe Trahey were pursuing Sidney Stinnie on foot on Hardy Drive. (Transcript 12, 59.) During the pursuit, Stinnie threw off his coat. (Tr. 14.) Delgado testified that she saw the coat land about fifteen feet from the front door of the apartment where Stinnie's aunt lived, in Building 824. (Tr. 14, 23.)

When Trahey caught up with and apprehended Stinnie, Delgado returned to the area where the coat had been discarded. (Tr. 15.) While being questioned, Stinnie told Trahey that some people "had it in for him," or words to that effect, and that was why he had to have "it" on him. (Tr. 61.) Stinnie, who had been very cooperative up to that point, "sealed up" when Trahey asked whether he was referring to a gun. (Tr. 62, 66.) These responses led

Trahey to believe that Stinnie had been carrying a weapon and that it might still be in the area. (Tr. 60, 62, 63, 65, 75.) Trahey notified Delgado that he thought there might be a gun in the discarded coat. (Tr. 17, 21, 52, 63, 66.)

When Delgado got to the area in front of Building 824, the coat was missing, and no one was standing nearby. (Tr. 16-17, 21, 24.) Another officer who had been surveying the area from a concealed location radioed Delgado and informed her that Stinnie's aunt had taken the coat into her apartment. (Tr. 22, 64.) Stinnie's aunt admitted Delgado into the apartment, and Delgado recovered the coat. (Tr. 41-42.) However, she found no gun in the coat, and she was denied consent to search the residence. (Tr. 42.)

Delgado testified that while inside the residence, after getting the coat, she looked out of the window and noticed Defendant standing outside in the area where the coat had been dropped. (Tr. 26, 29, 51.) He was alone and was looking around on the ground and at the buildings, for no apparent reason. (Tr. 28, 29, 33.) She was concerned that he was looking for the gun, or that he might have picked it up. (Tr. 28, 29, 33.)

Delgado left the apartment and approached Defendant. (Tr. 79-80.) She saw Trahey coming up the hill, but she made contact with Defendant before Trahey reached them.[1] (Tr. 79-80.) She asked Defendant if he had any weapons on him, and he said he did not. (Tr. 29.) She then identified herself as a police officer and told him she was going to pat him down. (Tr. 30, 47-48.) Delgado next asked him for an ID, which he began to produce as she was performing the pat-down. (Tr. 82.) During the pat-down, she felt a bulge in his right front pocket, which she believed to be a plastic bag. (Tr. 33, 49.) After the pat-down, she was satisfied that he did not have a gun. (Tr. 49.) Nevertheless, she asked for consent to search his person, and he denied consent. (Tr. 49.) Delgado then asked the Defendant if he had any drugs on him. (Tr. 34, 45, 48, 49.) He hesitated and then said that he had marijuana in his pocket. (Tr. 34, 45, 48, 49.) She then handcuffed him, informed him that he was under arrest, performed a search incident to the arrest, and seized the plastic bag in his pocket. (Tr. 35, 45, 50.)

---

[1] Trahey testified that he met up with Delgado as she was coming out of the residence and that he and Delgado were standing outside of the residence on the sidewalk where the coat was dropped, talking, when Defendant came around the corner, walking towards them. (Tr. 71-73.) However, he stated that he did not know where Delgado first saw Defendant. (Tr. 71.)

■■■■■■■■

## Question Presented

Should the seized evidence be suppressed?

## Analysis

The parties agree that the seizure of evidence was a direct result of Delgado's pat-down of Defendant, therefore, if the pat-down was performed in violation of Defendant's Fourth Amendment rights, the evidence must be suppressed.

At a hearing on a defendant's motion to suppress evidence, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights. *See Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *Simmons v. Commonwealth*, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989).

The parties agree that, at the time of the pat-down, Delgado did not have probable cause to arrest Defendant. However, the Supreme Court has held that "[a] police officer may in appropriate circumstances and in an appropriate manner search a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *See Terry v. Ohio*, 392 U.S. 1, 22, 20 L. Ed. 889, 88 S. Ct. 1868 (1968).

An officer may conduct a pat-down search for weapons if the officer can point to specific and articulable facts which reasonably lead her to believe criminal activity may be afoot and the person subjected to the search may be armed and dangerous. *See Terry*, 392 U.S. at 30; *James v. Commonwealth*, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996). In deciding whether to make a stop or effect a pat-down search, an officer is entitled to rely upon "the totality of the circumstances — the whole picture." *See Terry*, 392 U.S. at 22; *Peguese v. Commonwealth*, 19 Va. App. 349, 351, 451 S.E.2d 412, 413 (1994) (en banc). The officer is also entitled to view the circumstances confronting her in light of her training and experience, and she may consider any suspicious conduct of the suspected person. *See Terry*, 392 U.S. at 27; *James v. Commonwealth*, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996). Additionally, the officer does not have to be absolutely certain that the person is armed. If she reasonably believes that the individual might be armed, the search is warranted to protect herself or others who might be in danger. *See Simmons v. Commonwealth*, 217 Va. 552, 556, 231 S.E.2d 218, 221 (1977).

The Commonwealth has presented evidence that Delgado had reason to suspect that there had been a gun in Stinnie's coat and that, when the gun was not found with the coat, she had reason to be concerned that a gun remained in

the area. Because she saw Defendant standing and looking around at the spot where the coat lay only minutes before, Delgado had reason to suspect that he may have picked up the gun. We find that the Commonwealth has met its burden of proving that Delgado had a reasonable suspicion that Defendant might have been carrying a concealed weapon and that the investigatory stop and pat-down search for weapons were warranted to protect herself and others who might be in danger. Because the circumstances provided Delgado an objective basis for suspecting that criminal activity was afoot and Defendant was armed and dangerous, her pat-down search for weapons was not in violation of Defendant's Fourth Amendment rights.

Because the pat-down did not violate Defendant's Fourth Amendment rights, the evidence obtained as a result of the pat-down is admissible. The Court denies Defendant's motion to suppress.