COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Humphreys, Petty and Huff
Argued by videoconference


JAMAR RASAAN ALFORD

                                                     MEMORANDUM OPINION* BY
v.        Record No. 1775-19-2                    JUDGE WILLIAM G. PETTY
                                                        DECEMBER 15, 2020

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Phillip L. Hairston, Judge

Lauren P. Whitley, Deputy Public Defender (Angela L. Porter;
Office of the Public Defender, on briefs), for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Jamar Rasaan Alford entered a conditional guilty plea, pursuant to Code § 19.2-254,

conditioned on this appeal of the trial court's denial of his motion to suppress. For the reasons

below, we affirm the trial court's ruling.

BACKGROUND

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

We view the evidence in the light most favorable to the prevailing party, granting to the

prevailing party the benefit of any reasonable inferences. Congdon v. Congdon, 40 Va. App.

255, 258 (2003).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In the hearing for Alford's motion to suppress, Officer Mike Forstall testified that he had worked in the area of Wally's Supermarket for three years. On November 4, 2017, while off-duty, Officer Forstall received a phone call from a confidential informant he had worked with for about six months. The informant told Officer Forstall that "a male known as Mall was in Wally's in possession of a firearm and selling drugs." After confirming with the informant that the firearm had been seen and that the male was still in Wally's, Officer Forstall called 911 and gave the information to dispatch.[1]

Officer Clarence Keys, III, was the first officer to respond to a dispatch call regarding a man with a gun. Dispatch directed Officer Keys to Wally's Supermarket. Officer Keys had worked in "sector 411" of Precinct 4 for nine years. Wally's is in sector 411. Officer Keys testified that the area was a high-crime area where firearms and guns were "a problem." Officer Keys testified that as soon as he entered the store, he "immediately saw the individual that they described in the call, standing close to the [checkout] counter in the middle [of the aisle]." The store was one of several stores which the officers were "assigned to" to perform merchant

---

[1] The information relayed to Officer Keys from dispatch came from Officer Forstall, who received it from a known and reliable informant. Alford did not challenge the reliability of the informant nor his source of knowledge. Conceding this fact, see infra note 4, the dissent, relying on McArthur v. Commonwealth, 72 Va. App. 352 (2020), and Harris v. Commonwealth, 276 Va. 689 (2008), concludes that because the source of the information was not communicated by dispatch to Officer Keys it should be considered an anonymous tip and thus insufficiently reliable to justify Alford's seizure. We reject that analysis for the simple reason that it emanates entirely from the dissent's opinion rather than from an argument made by Alford to the trial court or to this Court. The substance of the dissent's analysis does not appear in the transcript of Alford's argument to the trial court nor in his briefs in this Court; having never been presented to the trial court nor argued on brief, it should not appear for the first time in our opinion. Rule 5A:18. When a court makes an argument that has not been made to the trial court nor included in the appellant's briefs to the court, the court becomes "an advocate for, as well as the judge of the correctness of appellant's position on the issues he raises." Bartley v. Commonwealth, 67 Va. App. 740, 744 (2017) (citation omitted) (addressing Rule 5A:20's requirement that an appellant present principles of law, argument and authorities). "Simply put, 'it is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him . . . .'" Id. at 746 (citation omitted). Accordingly, any argument as to the merits of this position has been waived by Alford and is not properly before us for consideration. Rule 5A:18.

checks. Officer Keys testified that, in keeping with the merchant check, he "spoke to the clerk" at the checkout counter, and the clerk handed Officer Keys the merchant book, which Officer Keys signed. Officer Keys completed "the merchant check and stepped out and spoke to the other officers." Officer Keys verified with the other officers that the description from dispatch was a white and red jacket with black pants and a black cap.

Officer Keys approached Alford and asked to speak to him. Alford proceeded him away from the exit aisle toward the area of the ATM. Officer Keys then asked Alford to move farther toward the back of the store. During this interaction, Alford attempted to put his hands in his pockets several times in spite of Officer Keys's instruction to keep his hands out of his pockets. Officer Keys then told Alford he would have to pat him down for the safety of all of them. The search revealed a firearm and drugs.

Alford sought to suppress the firearm and drugs. The trial court denied the motion to suppress. Alford then pled guilty to possession of cocaine with intent to distribute in violation of Code § 18.2-248(C) and carrying a concealed weapon without a permit in violation of Code § 18.2-308(A) contingent on appeal of the court's denial of his motion to suppress.

ANALYSIS

Alford argues that the trial court erred in denying Alford's motion to suppress the evidence because Officer Keys did not have reasonable suspicion that crime might be afoot. He argues that Officer Keys lacked reasonable suspicion because "there was not a sufficient basis for Officer Keys to conclude that Alford was the individual described in the dispatch alert" and "Officer Keys was not aware of any alleged criminal activity."

> When the defendant contends that the evidence sought to be suppressed was obtained in violation of his Fourth Amendment rights, the standard of review on appeal is de novo. In performing this review, we consider the evidence in the light most favorable to the Commonwealth and accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.

- 3 -

Mason v. Commonwealth, 291 Va. 362, 367 (2016) (citation omitted).  "An appellate court has a 'duty to discard' contested evidence presented by the accused and to 'regard as true' all credible evidence favorable to the prosecution."  Harper v. Commonwealth, 49 Va. App. 517, 523 (2007) (quoting Wright v. Commonwealth, 196 Va. 132, 137 (1954)).  "It necessarily follows that, when 'faced with a record of historical facts that supports conflicting inferences,'" an appellate court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Id. (quoting Jackson v. Virginia, 443 U.S. 307, 326 (1979)).

"As [the Supreme Court of Virginia] recently pointed out, 'in the seminal case Terry v. Ohio, [392 U.S. 1, 12 (1968),] an investigative stop was held objectively reasonable where the officer observed no elements of any crime whatever, but only an entirely lawful course of conduct which gave rise to a reasonable suspicion that the defendant was *preparing to commit a crime*.'"  Hill v. Commonwealth, 297 Va. 804, 812-13 (2019) (quoting Mason, 291 Va. at 369).

> The [United States] Supreme Court in Terry upheld the officer's actions based upon his underlying duty of "effective crime prevention and detection."  Terry, [392 U.S. at 12].  It did not matter that each act within "the series of acts" by Terry and his companions was "perhaps innocent in itself" because "taken together" the acts "warranted further investigation."  Id.  "Even though the suspicious individuals walking up and down the sidewalk 'could simply have been innocuous, albeit overly energetic, window shoppers,' that hypothesis of innocence 'did not invalidate the Terry stop.'"  Shifflett [v. Commonwealth], 58 Va. App. 732, 737 (2011).  Nor did it matter that the officer had suspected that Terry and his companions may be armed and dangerous when he approached because the officer was discharging a "legitimate investigative function . . . when he decided to approach [Terry] and his companions."  Terry, 392 U.S. at 22.

Id. at 814.  "Given its animating principle of reasonableness, 'the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape."  Raab v.

- 4 -

Commonwealth, 50 Va. App. 577, 582 (2007) (quoting United States v. Montoya de Hernandez, 473 U.S. 531, 544 (1985)). "To be sure, a 'brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information' may represent the most reasonable response an officer can give under the circumstances." Id. (quoting Simmons v. Commonwealth, 217 Va. 552, 554-55 (1977)).

> And, understandably so, for "the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.

Shifflett, 58 Va. App. at 736-37 (quoting Morris v. City of Va. Beach, 58 Va. App. 173, 183 (2011)). "Under the Fourth Amendment, 'the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of *noncriminal* acts.'" Raab, 50 Va. App. at 583. And the relevant moment we review for reasonable suspicion is the moment the suspect was detained. Investigatory information gathered by the officer prior to that moment does not implicate the seizure protections of the Fourth Amendment. See Hill, 297 Va. at 844.

Alford first argues that Officer Keys did not have reasonable suspicion because the description of the suspect "was both overly general and inconsistent with Mr. Alford's clothing." The record shows this argument is without merit.

Although potentially inconsistent evidence was presented to the trial court regarding the suspect's description, under our standard of review this Court accepts as true the credible evidence favorable to the prosecution and the reasonable inferences that flow from those facts. See Harper, 49 Va. App. at 523. The trial court heard testimony from Officer Forstall about what the dispatch alert displayed on the responding officers' mobile desktop computer. While looking at a printout of the dispatch display, Officer Forstall testified that the alert described the

- 5 -

suspect as a "black male, last seen wearing black ball cap, red and white jacket and black sweat pants, armed with a gun." Officer Forstall admitted that his recollection of the description he called in, "black jacket with red in it," did not match the dispatch display, "red and white jacket." Officer Forstall noted that he knew dispatch is "pretty accurate." He testified, "As to my recollection, I would say I don't know." Moreover, the body camera video introduced by Alford shows Officer Keys verifying with other officers that dispatch described the suspect as wearing a white and red jacket, black sweat pants, and black cap. The video shows clearly that Alford was the only person in the store at that time wearing a white and red jacket. The trial court concluded that the dispatch display was the correct description of the suspect, regardless of the officer's memory. The court could infer that Officer Keys was relying on the description from dispatch when he responded to the call. That detailed description matched Alford and did not match anyone else in the store.

Alford argues secondly that Officer Keys "was not aware of any alleged criminal activity."[2] Alford argues that Officer Keys's "suspicion that an individual may be carrying a concealed weapon, without more, does not provide him with reasonable suspicion of a crime." Alford suggests that "[s]omething more, such as an indication that Mr. Alford had a status prohibiting gun possession or some other indication of criminal activity, was required." We do not have to decide today whether "carrying a concealed weapon, without more," is sufficient for reasonable suspicion of criminal activity; here, there is "something more."

No violation of the Fourth Amendment occurred if, at the moment Officer Keys detained Alford, "the degree of suspicion that attache[d] to [Alford's] *noncriminal* acts" justified that investigatory detention. See Raab, 50 Va. App. at 582. By the time Officer Keys first

---

[2] The informant's information regarding the suspect selling drugs was not included on the dispatch display and is therefore not included in our analysis.

- 6 -

approached Alford, he already had information from three sources. First, he had experience with the area. Officer Keys, a twenty-two-year veteran of the Richmond Police Department, testified he had worked "sector 411" in the "4th Precinct" for nine years. That sector included Wally's Supermarket. Based on his experience, he described sector 411 as "one of the highest crime areas" in Richmond. He described Wally's Supermarket as part of that high crime area and testified that firearms and guns were "a problem" in that area. Moreover, the trial court could infer that Officer Keys would have similar experience as that of Officer Forstall, who also worked in the 4th Precinct and testified that the area around the store "was a high-drug area and one of the few open-air drug markets on that corner."

Second, Officer Keys obtained information from dispatch. As explained above, Officer Keys was told by dispatch that a person in Wally's Supermarket might have a gun. Dispatch described the person's clothing and informed the officers that the person was "poss[ibly] a prior felon and not to be armed." Third, Officer Keys entered the store to gain additional information. He talked to the cashier, signed the merchant book, surveyed the situation, and then went outside the store again. In that survey of the situation, Officer Keys saw Alford, who was the only person in the store that matched the description given by dispatch. Alford was standing in the center of the aisle leading to the exit, looking at his phone with a second man looking over his shoulder. Alford was within easy reach of the cash register and cashier. He did not appear, however, to be purchasing anything even though his presence in the narrow aisle made it harder for customers to go into the store, leave the store, or purchase items at the check-out counter. Several minutes later, after Officer Keys conferred with other officers outside, Officer Keys reentered the store and saw Alford in the same place, still looking at his phone, still not purchasing anything, and still with the second man looking over Alford's shoulder.

Even accepting for the purposes of analysis that Alford was seized, as he argues, at the first moment Officer Keys spoke to him, Officer Keys had a reasonable basis for investigation based on the facts and circumstances of which he was aware. The officer had direct knowledge of sector 411's high-crime history. He knew that firearms were a problem in that area. He had received the description of an individual who was suspected to have a firearm, and Alford matched that description. Moreover, it was not unreasonable for Officer Keys to consider Alford's loitering near the cashier without purchasing anything to be suspicious. See Terry, 392 U.S. at 22 (noting suspects' behavior "could simply have been innocuous, albeit overly energetic, window shopp[ing]"). Thus, even "where the officer observed no elements of any crime whatever, but only an entirely lawful course of conduct," Hill, 297 Va. at 812 (quoting Terry, 392 U.S. at 12), Officer Keys had an objectively reasonable basis for an investigative detention of Alford.

## CONCLUSION

Viewed in the light most favorable to the Commonwealth, the evidence showed that the detailed description of the suspect with a gun matched Alford and no one else in the store at that time. Moreover, the trial court could conclude that Officer Keys was aware of the dispatch display's information that the suspect was possibly a felon prohibited from possessing a firearm. Together with Officer Keys's knowledge of the high-crime area and his observations of Alford's behavior, Officer Keys had reasonable suspicion to detain and question Alford. The trial court did not err in denying the motion to suppress the evidence.

Affirmed.

Huff, J., dissenting.

The question presented by this appeal is whether Officer Keys could lawfully seize appellant based on information from dispatch that a person matching his description was suspected of carrying a firearm. Because precedent from the United States Supreme Court and Virginia's Supreme Court compel me to answer that question in the negative, I respectfully dissent.

I note from the outset that the Fourth Amendment does not force officers to choose between investigating crimes or simply ignoring potential suspects and allowing criminal activity to go unaddressed. The issue presented in this case, however, is not whether law enforcement may investigate a person; rather, it is whether law enforcement had the reasonable articulable suspicion upon which to justify *seizing* a person.

Appellant contends that he was seized the moment he complied with Officer Keys's instruction to move to another part of the store. I agree. A seizure in the form of an investigatory detention occurs when a reasonable person would not feel free to leave or otherwise terminate an encounter with a law enforcement officer. Florida v. Bostick, 501 U.S. 429, 435-36, 438 (1991). When employing this "reasonable person" standard, this Court considers the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544, 554 (1980). Relevant factors under the totality of the circumstances include:

> [T]he threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave.

Harris v. Commonwealth, 266 Va. 28, 32 (2003).

"But there is a *condition precedent* to a seizure: The individual must *submit* to the officer's force or authority." Jones v. Commonwealth, 52 Va. App. 548, 557 (2008). In other

- 9 -

words, the <u>Mendenhall</u> "reasonable person" test is "not applicable until the person submits to the officer's show of authority." <u>Cochran v. Commonwealth</u>, 258 Va. 604, 608 (1999).

Here, Officer Keys not only engaged in a show of authority when he instructed appellant to "step over" to the aisle within Wally's so that he could "explain something" to appellant, but appellant also submitted to that show of authority when he complied with the instruction. In addition to using a verbal command, Officer Keys used a physical show of authority when he placed his hand on appellant's arm and guided him within the aisle to ensure appellant's compliance with his instruction. <u>Harris</u>, 266 Va. at 32 (physical contact between officer and suspect a relevant consideration under a seizure analysis). Furthermore, at the time appellant was guided within the aisle, he was confronted by three armed and uniformed officers who were blocking any ingress or egress from the aisle. At this point, no reasonable person in appellant's situation would have felt free to leave or otherwise terminate the encounter with Officer Keys. Therefore, I conclude that under the totality of the circumstances, appellant was seized under the Fourth Amendment at the moment he claims.

As noted, appellant's seizure must have been supported by reasonable suspicion of criminal activity. The only information known to Officer Keys relevant to a potential firearm on appellant's person[3] was what was provided to him through dispatch: namely, that dispatch "got a call that a male fitting [appellant's] description" was at Wally's Supermarket and carrying a firearm. Indeed, Officer Keys conceded as much at the suppression hearing:

> [Defense Counsel]:     When you approached [appellant], the only
>                        information you had about him being

---

[3] As the Commonwealth asserts, precedent from this Court holds that an officer may seize a person based solely on suspicion that the person is carrying a concealed weapon so long as the officer's suspicion is reasonable and based on articulable facts. <u>See, e.g.</u>, <u>Jones</u>, 52 Va. App. at 560-61 (holding officers may reasonably suspect persons of unlawfully carrying concealed firearms based on particularized belief that such persons are carrying concealed firearms); <u>Andrews v. Commonwealth</u>, 37 Va. App. 479, 492 (2002) (same). On this record, however, such reasonable and articulable facts are lacking. <u>Infra</u> at 11-14.

|                     | engaged in any criminal activity was what [you] received from dispatch? |
|---------------------|---|
| [Officer Keys]:     | Right. |
| [Defense Counsel]:  | Had dispatch told you to arrest him? |
| [Officer Keys]:     | No. |
| [Defense Counsel]:  | Had they told you to stop him? |
| [Officer Keys]:     | No. Only dispatch [sic] told me to respond. There was a gentleman there with a gun matching the description. |
| [Defense Counsel]:  | They just gave you the information? |
| [Officer Keys]:     | Right. |
| [Defense Counsel]:  | Then you decided for yourself what you were going to do with that information? |
| [Officer Keys]:     | Right. |

There is no evidence in the record that the dispatcher informed Officer Keys that Officer Forstall was the source of the information prompting the investigation of appellant. As conceded by the Commonwealth, neither were there any commands or orders of a vertical nature that would allow imputation of knowledge from the dispatcher to the seizing officer. McArthur v. Commonwealth, 72 Va. App. 352, 364 (2020) ("vertical collective knowledge [is a] relationship in which one officer's conclusion is conveyed to others who then effect the seizure"); Edmond v. Commonwealth, 66 Va. App. 490, 503 (2016) (collective knowledge doctrine adopted for an officer "acting upon an *instruction* from *another officer* if the instructing officer had sufficient information to justify taking such action himself" (emphasis added)).

Nothing in the record suggests that Officer Keys was otherwise informed of Officer Forstall's involvement in the investigation prior to the seizure of appellant. Instead, the record simply reflects Officer Keys was told by dispatch that there was a person wearing certain

clothing suspected of carrying a concealed firearm at Wally's.  Absent any attribution or explanation for the tip, Officer Keys lacked a sufficient basis upon which to seize appellant at the time of appellant's acquiescence to Officer Keys's directions.  See Harris v. Commonwealth, 276 Va. 689, 693, 696 (2008) (noting that police could not reasonably rely on tip where the "dispatcher did not include any information concerning the identity of the person who had called in the information communicated in the dispatch").

For all intents and purposes as to Officer Keys's knowledge, then, the information provided to him in the dispatch was from an unidentified source.[4]  As such, the United States Supreme Court's decision in Florida v. J.L., 529 U.S. 266 (2000), is controlling.  529 U.S. at 268 ("The question presented in this case is whether an anonymous tip that a person is carrying a gun is, without more, sufficient to justify a police officer's stop . . . of that person.  We hold that it is not.").  J.L. not only held that an officer may not seize a person based solely on unidentified information that a person is carrying a firearm, it also noted that a tipster's accurate description of a potential suspect's location or appearance does not alter the reasonable suspicion analysis one way or the other.  Id. at 272 ("An accurate description of a subject's readily observable

---

[4] I do not dispute that Officer Forstall was a reliable source of information, and the majority is correct in noting that appellant does not argue to the contrary.  But that is ultimately beside the point, because the Fourth Amendment generally requires that courts analyze what the *specific* officer who conducted the seizure knew at the time of the seizure, not whether reliable information was potentially accessible in the abstract.  Kansas v. Glover, 140 S. Ct. 1183, 1191 n.2 (2020) (emphasizing that presence of reasonable suspicion depends on "the information possessed by *the officer* at the time of the stop"); see also McCain v. Commonwealth, 275 Va. 546, 552 (2008) ("A stop is permissible so long as *the officer* has reasonable, articulable suspicion that criminal activity may be afoot." (emphasis added)).  Even though Officer Forstall was not an "anonymous" source in the traditional understanding of that term, it is more plausible to treat him as such when considering that Officer Keys was unaware of who the individual was who placed the tip with 911.  Cf. Harris, 276 Va. at 692-93.  Without knowledge of the tipster's identity, Officer Keys had no way of assessing the tipster's reputation and could not "establish the requisite quantum of suspicion for an investigative stop."  See id. at 695-96.

location and appearance . . . does not show that the tipster has knowledge of concealed criminal activity.").

Applying those principles here, I conclude that the information provided to Officer Keys by dispatch did not provide him with reasonable suspicion that appellant was engaged in criminal activity. Because the source of the information prompting Officer Keys to investigate appellant was unknown to him, the degree of reliability he could reasonably place on such information was low and therefore constitutionally insufficient under the Fourth Amendment.[5] Id. at 268.

---

[5] The majority contends that my analysis on this point is based on argumentation not preserved by appellant at the trial court nor properly presented to this Court on appeal. Both contentions are wrong. With regard to Rule 5A:18, pages five through seven of appellant's written motion to suppress were based entirely on J.L. and whether the police here could reasonably rely on the information provided by dispatch, which belies the majority's assertion that such argumentation "does not appear" in the record and was not properly presented for the trial court's consideration.

The majority's additional contention that appellant insufficiently presented his Fourth Amendment argument to this Court fares no better. It is true that appellant's argument centered primarily on the notion that an officer may not presume a person to be engaged in criminal activity merely because the officer suspects the person of carrying a concealed firearm, a proposition not without support from persuasive authority of this Court. See, e.g., Commonwealth v. Johnson, No 1799-19-2, at *10 (Va. Ct. App. Apr. 28, 2020) ("An individual's choice to exercise his fundamental right to bear arms cannot, standing alone, serve as the basis for reasonable suspicion . . . that . . . he is committing a crime. Thus, we do not presume that an individual carrying a concealed firearm must be in violation of the law in doing so."). Even so, appellant's assignment of error is that "the trial court erred in finding that police had reasonable suspicion to seize Mr. Alford" and appellant specifically argued that "the reasonableness of the officer's suspicion is *measured by what he knew* at the time of the seizure." Appellant's Br. at 1, 15. Indeed, at oral argument, appellant's counsel advanced that argument by noting that Officer Keys "*was not informed* of the reliability of the informant." Oral Argument Audio at 4:26:44 to 4:26:48. When pressed by this Court that neither the reliability of Officer Forstall nor the confidential informant were before this Court, appellant's counsel stated that she raised the point not to argue that either person was unreliable, but rather to bolster her assertion that "the officer at the time had to look at the totality of the circumstances *that he had*." Oral Argument Audio at 4:26:52 to 4:27:18.

It is well settled that this Court reviews an appellant's claim that an officer lacked reasonable suspicion "*de novo*" and "determine[s] independently whether, under the law, the manner in which the evidence was obtained satisfies constitutional requirements." McCain v. Commonwealth, 261 Va. 483, 489-90 (2001). That analysis requires this Court to review the "totality of the circumstances," which means "the whole picture," not just bits and pieces that advance the conclusion favored by the majority. See Lawson v. Commonwealth, 55 Va. App.

- 13 -

Additionally, even taking as true the Commonwealth's argument that appellant's appearance and attire sufficiently matched the description given to Officer Keys by dispatch, J.L. mandates that such considerations do not control the outcome here. Id. at 272.

Furthermore, Officer Keys did not obtain any additional facts that would have provided him reasonable suspicion that appellant was carrying a concealed weapon.[6] He did not observe a gun on appellant's person at any point prior to the seizure. Nor did he see a "bulge" in appellant's clothing indicative of a concealed firearm. Andrews v. Commonwealth, 37 Va. App. 479, 492 (2002) (stating that presence of "heavy object" in defendant's jacket pocket aided officer in establishing reasonable suspicion that defendant was carrying a concealed firearm).

Finally, the Virginia Supreme Court's decision in Harris v. Commonwealth, 262 Va. 407 (2001), forecloses the argument that other factors–including Officer Keys's knowledge and experience as well as appellant's innocuous behavior in the store–provided reasonable suspicion of criminal activity. In Harris, dispatch relayed information to the police from an anonymous caller that a black male wearing "jeans, a white T-shirt, and a checkered jacket" was armed and selling drugs near an apartment complex known by the police to be a high crime area with frequent drug activity. Id. at 410. When the officers arrived at the scene, they noticed three men, one of whom matched the description provided by dispatch, "standing near a bench that formerly had been used as a bus stop" and close to a "no trespassing" sign posted on one of the

---

549, 555 (2010) (internal citation and quotation marks omitted). My analysis follows from that principle and is not, as the majority suggests, wholly divorced from appellant's arguments.

[6] At the suppression hearing, the Commonwealth referenced a dispatch report to refresh Officer Forstall's recollection as to the chronology of his communications with dispatch. The portion of that report noting that appellant was "poss[ibly] a felon and not to be armed" represented dispatch's communication with Officer Forstall and was not representative of information communicated to Officer Keys or any other on-duty officer. Notably, the Commonwealth agrees with that factual characterization of the dispatch report in its brief, and unlike the majority, did not rely on the report in its Fourth Amendment argument.

apartment complex's buildings.  Id.  The officers did not observe any activity consistent with drug transactions or any activity demonstrating that the suspect was in possession of a concealed firearm.  Id.  However, one of the officers had worked in a drug elimination program for the apartment complex for two and a half years, had "become familiar with most of the residents and their regular visitors, and had never before seen any of the three men at the housing development."  Id.  Based on the totality of the information possessed by the police and a suspicion that a trespass was taking place, the police conducted a stop and frisk of the man wearing a checkered jacket and uncovered a concealed firearm and marijuana.  Id. at 410-11.

The Supreme Court deemed the foregoing facts insufficient to provide the police with reasonable suspicion that the suspect was trespassing, selling drugs, or possessing a concealed firearm.  Id. at 414, 417.  It did so notwithstanding the seizing officer's years of experience and familiarity with the area as well as the suspect's proximity to a "no trespassing" sign.  Id. at 415-16.  It rejected the Commonwealth's characterization of the suspect's activity as suspicious even though the suspect "had no apparent reason to be standing on [a] private street corner."  Id. at 416 (alteration in original).  It further rejected any reliance on the dispatch's notification that a suspect was armed and selling drugs because the police never personally observed any activity that would have corroborated those allegations.  Id. at 414.  Moreover, it principally noted that to the extent an officer may rely on his or her knowledge of a high crime area in justifying a seizure of a person, such knowledge must "attach with . . . particularity to the observed activity or the individual."  See id. at 416.

I find Harris to be instructive in this case, as it is consistent with the principle that one's mere presence or otherwise innocuous behavior in a high crime area cannot justify a seizure of a person.  See, e.g., Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990) ("Even in high crime areas, where the possibility that any given individual is armed is significant, Terry requires reasonable,

individualized suspicion . . . ."); <u>McCain v. Commonwealth</u>, 275 Va. 546, 553 (2008) ("A person's Fourth Amendment rights are not lessened simply because he or she happens to live or travel in a 'high crime' area."). Furthermore, when read in conjunction with <u>J.L.</u>, the totality of the circumstances shows that Officer Keys did not personally have reasonable suspicion that appellant was carrying a concealed firearm or engaged in other criminal activity.[7] I therefore respectfully dissent and conclude that the seizure violated appellant's Fourth Amendment rights and that any evidence derived from that seizure should have been suppressed in the trial court.

---

[7] An additional concern I have with the majority's analysis is that it is unclear exactly *what* crime it believes Officer Keys reasonably suspected appellant of engaging in. As the Supreme Court emphasized just this year, the Fourth Amendment's mandate of particularity requires reasonable suspicion of a particular crime. <u>Glover</u>, 140 S. Ct. at 1190 n.1 ("To alleviate any doubt, we reiterate that the Fourth Amendment requires . . . an individualized suspicion that a particular citizen was engaged in a *particular crime*." (emphasis added)). The majority does not appear to rely on our precedents in <u>Jones</u> and <u>Andrews</u> and hold that Officer Keys reasonably suspected appellant of unlawfully carrying a concealed weapon. It discusses extensively Officer Keys's experience and his knowledge that guns were "a problem" in the area, but it does not hold that such knowledge translated to reasonable suspicion of a gun-related crime. It avers that it was "not unreasonable" for Officer Keys to consider appellant's act of looking at his phone near a cash register "suspicious," but comes short of concluding that Officer Keys reasonably suspected appellant of engaging in theft or loitering-related crimes. <u>See</u> <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124 (2000) ("The officer must be able to articulate more than an . . . unparticularized suspicion or hunch of criminal activity." (internal citation and quotation marks omitted)).